396 A.2d 631

In re ESTATE of Joseph GLADOWSKI, Deceased.

Appeal of Agnes HEWITT, Helen Troyak and Andrew Gladowski.

Supreme Court of Pennsylvania.

Argued Sept. 18, 1978.

Decided Jan. 24, 1979.

Donald Laird Hankey, B. Earnest Long, Carl E. Fisher, Greensburg, for appellant.

James Irwin, Arnold, for appellee.

Before EAGEN, C. J., and ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

This appeal challenges a final decree of the Court of Common Pleas of Allegheny County, Orphans' Court Division, which ruled in part that the proceeds of a savings bank account in the joint names of Joseph Gladowski, deceased, and his daughter, Ann Mazuran, are not an asset of the decedent's estate; but rather the property of Ann Mazuran.

The appellants are three of the decedent's seven surviving children.[1]

Joseph Gladowski died testate on September 30, 1976, at the age of eighty-five. He had come to the United States from Poland at the age of twelve and worked as a coal miner for forty years. A widower since 1936, Gladowski retired due to disability in 1951 at the age of sixty. Subsequently, he suffered from numerous serious physical ailments. His daughter, Ann Mazuran, lived with him and cared for him during his many illnesses.

The decedent was a party to four transactions which have a bearing on this case. On September 21, 1963, he executed a deed conveying title to his residence[2] to himself, Joseph Gladowski, and Ann Mazuran as joint tenants with right of survivorship. On that same day, decedent executed a will naming Ann Mazuran executrix and authorizing her to sell all of his real estate and, after paying his debts and funeral expenses, to divide and distribute the residue of the estate in equal shares to his seven-named children.

On March 4, 1966, decedent opened a joint savings account in the names of Joseph Gladowski or Mrs. Ann Mazuran as joint tenants with right of survivorship. On June 26, 1975, decedent executed a second will naming Ann Mazuran executrix, devising his residence specifically to Ann Mazuran, and bequeathing the residue of his estate in equal shares to his seven-named children. The terms of this will are substantially the same as the earlier will except for the disposition of decedent's residence.

At the time of his death, decedent had the following: (1) the savings account held jointly with Ann Mazuran containing a balance of $16,226.66 (The account was originally opened with a deposit of $217.40; all of the deposits consisted of decedent's money; on June 30, 1975, the account had a balance of $34,848.40; and, withdrawals did not begin until

1. Six of the surviving children are divided on the issue and have taken opposite sides in this litigation. The record fails to disclose the position of the seventh.

2. The only real estate ever owned by decedent was his residence.

January 20, 1975, and were all signed by Ann Mazuran); (2) the residence held in joint tenancy with Ann Mazuran; (3) miner's death benefits in the amount of $2,000.00; and, (4) four life insurance policies designating Ann Mazuran as beneficiary and amounting to $1,682.91.

The Orphans' Court ruled Ann Mazuran was entitled to decedent's residence as the survivor of the joint tenancy, to the proceeds of the insurance policies as the designated beneficiary, and to the miner's benefits by virtue of her right as a member of decedent's household to the family exemption of $2,000.00. Appellants do not now contest these rulings. They challenge only the court's additional ruling denying their petition seeking to compel Ann Mazuran to pay over to decedent's estate proceeds of the joint bank account remaining at decedent's death and to account to the estate for funds which she withdrew from the joint account before his death. Appellants' petition was dismissed on the basis of the court's conclusion that the decedent had made a valid gift of the proceeds of the bank account to his daughter Ann during his lifetime.

▇▇▇ Donative intent is one of the essential elements of a completed inter vivos gift. Under Pennsylvania law, the creation of a joint interest in a bank account with rights of survivorship, evidenced by the signatures of both parties, is *prima facie* evidence of the intent of the party funding the account to make an inter vivos gift to the other joint tenant.[3] *Estate of Young*, 480 Pa. 580, 391 A.2d 1037 (1978); *Estate of Lux*, 480 Pa. 256, 389 A.2d 1053 (1978); *Estate of Keeney*, 465 Pa. 45, 348 A.2d 108 (1975); *Scott Estate*, 455 Pa. 429, 316 A.2d 883 (1974). It is undisputed that both Joseph Gladowski and Ann Mazuran signed the contract with the bank, which read in part as follows:

**3.** Compare 20 Pa.C.S. § 6304(a) (Supp.1978–79), applicable to accounts created after September 1, 1976, which provides, in part, that "[a]ny sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created."

"All deposits now or hereafter made in this account shall be held and owned by us as joint tenants with right of survivorship and not as tenants in common . . . and shall be withdrawable by appropriate order signed by either of us . . . . Upon the death of either of us, the surviving tenant shall be the sole owner of said account and the balance thereof."

This was sufficient to raise a presumption that, at the time the account was opened, Joseph Gladowski intended to make a gift of the proceeds to his daughter Ann. However, such a presumption may be overcome where there is clear, precise and convincing evidence to the contrary. Cf. *Estate of Lux*, supra; *Beniger Estate*, 449 Pa. 373, 296 A.2d 773 (1972), and *Estate of Cilvik*, 439 Pa. 522, 267 A.2d 836 (1970). We conclude this is such a case.

Ann Mazuran, who seeks the funds by virtue of the claimed gift inter vivos, admitted, during her testimony in the trial court, that the bank signature card did not reflect the entire agreement between her father and herself at the time the account was opened in 1966. She admitted her father wanted her name on the account as a matter of convenience so she could transact business on his behalf when he was physically unable to do so. She also stated that, when the account was opened in 1966, her father intended that, at the time of his death, the money in the account was to be equally divided among his children. But she further said that her father changed his mind "before 1970," after he became ill, and after the other children failed to visit or help in caring for him, and that her father then told her "he wanted me to have everything."

While the record is none too clear, the trial court apparently concluded a valid gift inter vivos was effected at the time the account was opened. This was error since it is clear from Ann Mazuran's own testimony that the donative intent essential to a completed gift inter vivos was not present in 1966 when the account was opened. Hence, the crucial issue is whether or not Ann Mazuran's testimony

that "before 1970" her father changed his mind and then declared "he wanted me to have everything" is sufficient in law to establish a valid gift inter vivos of the account.[4] Under the circumstances, we rule it is not.[5]

The burden of proving the alleged gift was upon the claimant by clear, precise and convincing evidence. See *Estate of Clark*, 467 Pa. 628, 359 A.2d 777 (1976); *Titusville Trust Company v. Johnson*, 375 Pa. 493, 100 A.2d 93 (1953). Contravening and speaking against the claimant's bare statement that, "before 1970," the father said "he wanted me to have everything" is the fact that, on June 26, 1975, the decedent executed a will bequeathing the residue of his estate in equal shares to his seven children. Other than the residence, the only assets decedent had at the time he executed the will and at his death were the joint savings account in his name and Ann's, the miner's death benefits amounting to $2,000.00 to which Ann was entitled by virtue of the family exemption, and the life insurance policies designating Ann as the beneficiary.

Additionally, the testimony of the scrivener of the second will tends to deny that a gift inter vivos of the bank account had previously been completed.

Attorney Dennis G. Nader, who prepared the will, testified that, although he knew the house would go to Ann Mazuran by operation of law and explained the concept of joint ownership to decedent, he nevertheless provided in the will for a bequest of the house to Ann. He further testified that the existence of a bank account in joint names with the right of survivorship was not brought to his attention and that he understood the residue of the estate was composed of cash. As to the amount of cash to be included in

4. The trial court did not discuss this issue or make any findings in reference thereto.

5. In view of this ruling, we need not reach other questions raised by the parties concerning the existence of a confidential relationship between Ann Mazuran and her father and the competency of the testimony of those challenging the gift that the father always intended the bank account fund to be equally divided among his children.

decedent's residuary estate for the purpose of determining federal estate tax liability, Attorney Nader testified as follows:

"A. The only ascertainment I made, I asked questions of both Mrs. Mazuran and Mr. Gladowski, as to what amount of cash was involved. The way I phrased it was 'was it over $5,000?' And then I went to over $25,000 and was it over $60,000. And the indication was that at least it was below $60,000. And that is the figure to the best of my recollection."

In addition, Attorney Nader testified:

"A. I drew up the will, and I explained to Mr. Gladowski that the house would go to his daughter. And I showed him the will and explained that everything else he had would be divided among the rest of his children. I didn't make reference to any specific bank account or any specific amount of cash."

If decedent had already effected an inter vivos gift of the joint savings account, there would have been no assets to form his residuary estate and the will provision would have been meaningless. On the basis of decedent's responses to questioning from Attorney Nader, we can infer that, on June 26, 1975, decedent had in excess of $25,000.00 which he wished divided among his children. Thus, he must have referred to the joint savings account as that to be divided among his children since this represented his sole cash asset.

We, therefore, conclude that the trial court erred in refusing to direct Ann Mazuran to account for the funds involved since the evidence was not clear, precise and convincing that a completed gift inter vivos thereof ensued.

Decree vacated and the record is remanded for further proceedings consistent with this opinion.

Costs on the estate.

LARSEN, J., dissents.

266

O'BRIEN and MANDERINO, JJ., did not participate in the consideration or decision of this case.

POMEROY, former J., did not participate in the decision of this case.