474 A.2d 302

**Paul G. ESTEP, Appellant,**

v.

**Thelma R. (Sharp) ESTEP.**

Superior Court of Pennsylvania.

Submitted June 7, 1983.

Filed March 23, 1984.

Reargument Denied June 5, 1984.

Petition for Allowance of Appeal Granted Oct. 1, 1984.

Joseph F. Cassarino, Greensburg, for appellant.

P. Louis DeRose, III, Greensburg, for appellee.

Before CERCONE, President Judge, and SPAETH and HESTER, JJ.

CERCONE, President Judge:

The parties to this appeal were married on July 2, 1978 and separated in August 1980. Appellant-husband filed a complaint in divorce. On February 19, 1981, a hearing was held before a Master for purposes of determining the equitable distribution of marital property. Appellant filed exceptions to the Master's report. After argument, the court affirmed the report and incorporated it into an order of court. By order dated October 13, 1981 the parties were granted a divorce under § 201(c) of the Divorce Code of 1980, 23 P.S. § 101 *et seq.* and the court ordered the equitable distribution of the parties "marital property." The assets were divided as follows.

(1) That the proceeds of the Merrill, Lynch, Pierce, Fenner and Smith account of the parties shall be withdrawn by the parties and the proceeds applied to the mortgage or loan at Union National Bank, and any balance of the Merrill-Lynch Account shall be divided equally by the parties.

(2) The plaintiff husband shall have sixty days from the date of this decree within which to purchase the interest of the defendant wife in the residence property of the parties located at R.D. # 1, Irwin, Pennsylvania, for the

sum of $27,500.00; in the event that plaintiff husband is unwilling or unable to purchase the wife's interest in said residence property within sixty days of the date of this decree, the property shall be advertised for thirty days and exposed to a public sale and the proceeds be divided equally by the parties.

(3) Each party shall retain those items of personal property in the possession of such party. In all other respects, the parties shall have no claim against each other for any other personal property.

\* \* \* \* \* \*

(5) In the event plaintiff husband exercises his right to purchase the interest of the wife in the residence property of the parties, in accordance with paragraph two above, the plaintiff husband shall pay to the defendant wife, the sum of $55.00 the first month after the date of this decree, and $50.00 per month thereafter, until the sum of $1,555.00, representing defendant wife's one-half interest in the excess of the personal property withdrawn by the plaintiff husband, has been repaid to the plaintiff wife. In the event plaintiff husband does not exercise his right to purchase the wife's interest in the residence property of the parties and the residence is sold, the plaintiff husband's share of the proceeds shall be reduced by the sum of $1,555.00 and the same shall be added to the defendant wife's share of the proceeds of said sale.[1]

The "Opinion and Decree" of the court below incorporated the various findings of fact made by the Master and discussed their relevance in light of the pertinent statutory factors to be considered pursuant to § 401(d) of the Code. Appellant being unhappy with the Master's apportionment as accepted by the court, has filed the current appeal presenting six issues.

Equitable distribution is within the discretion of the trial court and its decision will not be disturbed absent

1. Paragraph (4) of the order, which is not here reproduced, deals with the assessment of costs and is not a matter on appeal.

an abuse of that discretion. *Kleinfelter v. Kleinfelter*, 317 Pa.Superior Ct. 282, 463 A.2d 1196 (1983); *Gee v. Gee*, 314 Pa.Superior Ct. 31, 460 A.2d 358 (1983). In reviewing such we must keep in mind that the Master and the trial court were free to accept or reject the parties' testimony. *Gee*, 314 Pa.Superior Ct. at 34–5, 460 A.2d at 360. While we must give the fullest consideration to the Master's findings regarding credibility, we have a responsibility to make a complete and independent review of the record. *Rorabaugh v. Rorabaugh*, 302 Pa.Superior Ct. 1, 448 A.2d 64 (1982); *Rollman v. Rollman*, 280 Pa.Superior Ct. 344, 421 A.2d 755 (1980). Finding that the trial court included non-marital property in its order of equitable distribution, we believe the court abused its discretion and therefore we vacate its order. Before addressing appellant's complaints, a review of the statutory provisions controlling equitable distribution is necessary.

Section 401(d) requires a court in proceedings for divorce to resolve, upon request, the marital property rights of the parties. In resolving such, a court must consider all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

The Code, § 401(e) defines "marital property" as "all property acquired by either party during the marriage" with the exception of:

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958. Public Law 85–857, 72 Statute 1229 [1], as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced. (Footnote deleted.)

The legislature has further provided in subsection (f) that:

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be

marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

In applying the above provisions to the facts of the case at hand, we must keep in mind that the legislature has declared it to be the policy of the Commonwealth to:

Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

23 P.S. § 102(a)(6).

Finding that both the Master and the court erred in their determination as to what comprised marital property, we hold that the equitable distribution award was improper.

Appellant first contends that he was entitled to a "substantially greater interest in the parties' real estate" than appellee was. The parties had taken up cohabitation seven months prior to their marriage. During such period of time appellee-wife paid for the various household expenses and did the various household chores while appellant-husband, who was not employed, cleared a parcel of land and commenced building a house. He had purchased the lot with his own funds but had placed the title in joint name with appellee. Prior to the marriage appellant consumed his own funds in building the residence.

At the time the parties were married, the house was about 80% completed. After the marriage the deed was placed in the name of the parties as tenants by the entireties. Appellant finished the house during the marriage and appellee and her daughter by a former marriage assisted by painting and varnishing and doing other similar household work. Before the house was completed $8,000 of appellee's own premarital savings was expended on completing the house. The parties also took out a $6,000 loan from a

commercial lender on which appellant has made payments and appellant's mother provided $6,000 to finish the home.[2]

The court found that the parties had made equal contributions to the house and therefore should share in it equally. To reach its conclusion, the trial court viewed appellee's contributions as both breadwinner and homemaker *prior to marriage* as her contribution in acquiring the house which it deemed to be marital property. Appellant complains that his premarital contribution of both money and time was greater than appellee's and therefore he was entitled to a greater share. We find that the parties' efforts in anticipation of marriage should not have been considered as marital property.

■ Equitable distribution is relatively new to this Commonwealth, having been enacted as part of the Divorce Code of 1980. Prior to the enactment of the Code, the determination of the parties property rights to joint property was limited to an action in partition. *See Shoup v. Shoup*, 469 Pa. 165, 364 A.2d 1319 (1976). With the adoption of the new Divorce Code, a husband and wife are entitled to an equitable distribution of the property of the marriage. However, if the property is not marital property then the court may direct its partition. *Platek v. Platek*, 309 Pa.Superior Ct. 16, 454 A.2d 1059 (1982).

■ Only property acquired during the marriage is deemed marital property. *See Bacchetta v. Bacchetta*, 498 Pa. 227, 445 A.2d 1194 (1982); 23 P.S. § 401(f). Therefore, by definition, property acquired prior to the marriage is not marital property and under § 401(d), which only empowers the court to equitably distribute marital property, it may not be distributed. Here the parties agree that the real property had been purchased and 80% of the construction had been completed prior to the time the parties wed,

2. Appellant testified that the total outlay, excluding his own time, in constructing the house was $33,000.00 or $34,000.00. If we total the marital expenditures they total more than 20% of the total building price. Therefore, on remand the trial court should reconcile the premarital "80% completed" with the marital expenditures.

therefore, that portion of the residence was not marital property within the meaning of equitable distribution. Hence the court erred in equitably proportioning the entire value of the residence.

█ Our holding is in agreement with cases from our sister state New Jersey, which has been faced with similar problems before our Divorce Code was enacted. *Cf. Griffith v. Griffith,* 185 N.J.Super. 382, 448 A.2d 1035 (1982) (where one spouse had purchased realty prior to marriage, other spouse was only entitled to share in the amount of mortgage paid during marriage); *Mol v. Mol,* 147 N.J.Super. 5, 370 A.2d 509 (1977) (where husband brought residence into marriage, wife was only entitled to share in enhanced value of house due to couple's joint efforts during marriage.) *See also In Re Marriage of Johnson,* 28 Wash. App. 574, 625 P.2d 720 (1981). We must however note one factual distinction between the current case and those of our sister state New Jersey. In both *Mol, supra,* and *Griffith, supra,* the property had not been held, prior to the marriage, as joint property. However, this distinction does not require a different result. By statutory definition such property is not marital property subject to equitable distribution, but instead the property may be subject to partition. *See Platek, supra.* Since the property is not marital property, at least in part, a court need not and should not look to the respective contributions of the parties in acquiring such non-marital asset.

This court is not to usurp the trial court's duty as factfinder and we will not adopt guidelines or presumptions in addition to those set forth by the legislature. *See Ruth v. Ruth,* 316 Pa.Superior Ct. 282, 462 A.2d 1351, 1353 (1983). Nonetheless, we are constrained to find that the inclusion of non-marital property by the trial court goes beyond the clear legislative mandate and is therefore an abuse of discretion. Therefore we remand for further proceedings.[3]

---

**3.** We do not intend to minimize a couple's efforts in anticipation of marriage, however it is the responsibility of the legislature, or the

■ We must also agree with appellant that the court committed an abuse of discretion in dividing the Merrill-Lynch account. The trial court found that it was uncontested that appellant had placed into that account $2,500 representing the proceeds from the sale of property which he had owned prior to the marriage. Such is clearly excludable as marital property under § 401(e)(1).[4] *Compare, Gee, supra,* (cattle brought into marriage were not traceable to cattle present at separation); *Platek, supra,* (one's physical well being does not constitute property acquired prior to marriage). Nor is the presumption that a gift of one half was made to appellee appropriate in the context of equitable distribution. In other circumstances, funds deposited in a joint account might be presumed to be a gift to the co-tenant. *See In Re Estate of Gladowski,* 483 Pa. 258, 396 A.2d 631 (1979). The Divorce Code requires us to look beyond the title in which property is held, § 401(f). To rely upon the above presumption of a gift to the co-tenant would require us to ignore the Code's clear directive to disregard the notion of title ownership and would require us to contravene the clear intent of the legislature.

■ The remaining balance of $3500 present in the account requires a different result. Appellant contends the balance resulted from earnings he himself accumulated doing odd jobs during the marriage and appellee made no contribution thereto. As stated earlier, assets acquired during the marriage are presumed to be marital property. The fact that appellant's efforts created the fund is not controlling. The Supreme Court noted in *Bacchetta,* 498 Pa. at 232, 445 A.2d at 1197, that one of the main purposes of the Divorce Code was to correct the economic injustices suffered by a non-working spouse who has contributed his or her time to the family or home enabling the other to realize economic gain. Appellant's contention of injustice is

parties themselves by agreement, to provide for the inclusion of pre-marital property accumulated in anticipation of marriage.

4. Any interest earned on such sum would be marital property under § 401(e)(1).

even more unacceptable than that pointed out in *Bacchetta.* Here appellee not only was the homemaker but she also was the main bread-winner.[5] Both roles must be considered under § 401(d)(7). Justice demands that the balance of $3500 be included as marital property.

The Code requires courts to consider such factors as the parties' sources of income, 401(d)(3) and (6), the value of property set aside, 401(d)(6) and the economic circumstances of each party 401(d)(10). In other words, in determining what is equitable, the courts must view the parties situation in light of the totality of the circumstances. Having found error in the court's rulings as to major assets of the marriage, all other finding as to the disposition of the various assets must be reconsidered. Therefore, we find it necessary to review appellant's other complaints so to provide guidance to the trial court.

Appellant next complains that the $6,000.00 provided by his mother was a loan and not a gift. The Master and the court found that the $6,000.00 was a marital gift to both parties. Section 401(e) provides that all property acquired during the marriage is presumed to be marital property. Appellant failed to overcome such presumption. No documents were executed to evidence any understanding between the parties and appellant's mother's own testimony was indefinite. Therefore, we can find no abuse of discretion in including the $6,000.00 as marital property.

Additional complaint is made that the court erred in its consideration of the insurance policies owned by the parties. The Master found that the parties' insurance balanced each other out. The trial court found the parties' insurance "insignificant." Section 401(d)(6) requires consideration of the parties' respective insurance coverage. In view of the fact that appellee's various policies had relatively small surrender values which were accumulated substantially prior to marriage and due to appellant's hazy account

5. Appellant did make payment on the commercial bank loan and did pay for a weekly night out.

of his own insurance, we can find no abuse of discretion in the court discounting the importance of the policies.

 Appellant's next argument is that the $3,800 in cash which he removed from the parties' safe deposit box should not have been included as marital property as it belonged to a third party. He testified that the third party gave him the money to pay for materials and additional labor for the remodeling of the third party's house. Appellee-wife did not know where the money came from. The trial court, after mentioning that the best evidence would have been testimony by the third party (who allegedly passed away though his wife was still alive), found that the Master had the responsibility to assess credibility and found no error in the Master disbelieving appellant's account. We agree, especially in light of appellant's failure to produce any documents regarding the project. Furthermore, he was indefinite as to how many rooms he had remodeled and he was evasive as to what renumeration he received from the job.

 Finally, appellant contends that the Master overvalued the real estate. The inventory and appraisement executed by the parties set the value of the house at $55,000 to $60,000.[6] Both the Master and the court accepted appellant's value as stated in his inventory. We find no abuse of discretion. *Compare, Gee, supra,* (Master relied upon appraisal report stipulated to by the parties).

For the above stated reasons, which require a fresh approach to equitable distribution in this case, we vacate the order of court and remand for further proceedings not inconsistent with this opinion. We realize, that under the circumstances of this case, upon remand the same result may be reached as was reached before. However, due to the far reaching ramifications and the likelihood of similar situations arising in the future, we believe it necessary to offer the above guidance to both the bench and bar of this

6. Appellee set the price at "at least $60,000" while appellant valued it at $55,000 to $60,000.

Commonwealth. We can not reiterate often enough that in equitably distributing marital property, the hearing court must consider the statutory factors listed in § 401(d). In the current case, the court on remand must reconsider the various assets in light of such factors.

Order vacated and case is remanded for further proceedings. We do not retain jurisdiction.

HESTER, J., files a concurring and dissenting opinion.

HESTER, Judge, concurring and dissenting:

Additional facts, excluded by the majority, may facilitate a more complete understanding of the matter. At the time of trial, appellant was 65 years of age and appellee was 59 years of age. They were married on July 2, 1978, following seven months of cohabitation. No children were born of the marriage, and both parties were married once before.

Appellant received $342.00 per month in social security benefits and an average monthly compensation of $400.00 from his part-time employment as a carpenter. But for restrictive health problems, appellant had a much higher earning capacity as a carpenter. Appellee was receiving $323.00 per month in social security benefits and $303.57 per month as a disability pension from Equitable Life Insurance Company. Prior to suffering a heart attack in September, 1979, appellee was earning $1,000.00 per month.

The master identified the following marital property subjected to equitable distribution:

1. a stock fund with Merrill, Lynch, Pierce, Fenner & Smith in the amount of $6,000.00;

2. a savings account with Franklin Federal Savings & Loan Association in the amount of $590.00;

3. a checking account with Union National Bank in the amount of $100.00;

4. a safe deposit box containing $3,800.00;

5. A Bolens riding lawn mower without an estimated value;

6. a second-hand refrigerator without an estimated value;

7. a living room round table purchased for $25.00;

8. a picnic table purchased for $30.00;

9. a bedroom suite without an estimated value;

10. residential real estate situate at Irwin, Pennsylvania, constructed by the parties themselves with the assistance of a bricklayer, electrician and plasterer at a cost of $33,000.00, and having a fair market value of $55,000.00.

First, appellant challenges the equal interests in the marital residence assigned by the master. In 1977, appellant purchased the lot upon which the parties eventually constructed their house. The thirty-three-thousand-dollar cost for the unimproved land, materials and labor in constructing the house was provided by a nine-thousand-dollar mortgage loan from Union National Bank, $8,000.00 from appellee, $6,000.00 from appellant's mother and $10,000.00 from appellant.

Appellant emphasizes the fact that he paid $3,750.00 for the unimproved lot prior to the marriage and that his premarital earnings were the source of the entire purchase price. Secondly, he points out that he worked full-time from March, 1978 through September, 1978 constructing the house, and that the house was 80% completed on the marriage date of July 7, 1978. Appellant concludes that his contributions to the house were substantially greater than appellee's, thereby warranting an award to him in excess of 50% of the parties' equitable interest in the fair market value of the house.

Section 401(e) of the Divorce Code defines "marital property":

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced.

23 Pa.C.S. § 401(e).

The real estate here was purchased prior to the marriage in an unimproved condition and with funds fully provided by appellant. Although the parties were not married on the date of purchase in 1977, both names were placed upon the deed as purchasers. Since the property was acquired prior to marriage, we are presented with the issue of whether its entire fair market value is subjected to equitable distribution, whether the entire value is excluded or whether only that amount reflecting the increase in value from the date of marriage is marital property. This is a novel issue for

our appellate courts insofar as the parties began cohabitating around the time the unimproved real estate was purchased and for seven months thereafter, until their marriage on July 7, 1978.

The increase in value of separate property following the date of marriage has been widely viewed as marital property particularly where the increase resulted from the joint contributions and efforts of the parties. *In Re Marriage of Johnson*, 28 Wash.App. 574, 625 P.2d 720 (1981); *Mol v. Mol*, 147 N.J.Super. 5, 370 A.2d 509 (1977). I am convinced that this is at least the case before us. The parties moved into the residence immediately following their marriage even though the residence was only 80% complete. For the next two months, during which construction continued, appellant devoted his full time to construction work while appellee remained employed and solely defrayed the expenses of utilities, household sundries, real estate taxes and the mortgage loan. Appellee also performed the daily housekeeping chores without assistance from appellant.

Although it is not readily determinable whether the entire value of an asset jointly purchased by both parties before marriage and retained following the marriage constitutes marital property, I am of the opinion that it does so qualify here. Section 401(e) defines marital property as "property acquired by either party during the marriage ..." I do not construe this definition as *all-inclusive;* therefore, it does not preclude me from finding the full value of property acquired prior to marriage to qualify, under certain circumstances, as marital property. It is particularly noteworthy that both parties' names were placed on the deed to the real estate when it was purchased in 1977. Although appellant used $3,750.00 of his funds to purchase the lot and spent nearly four months prior to the marriage constructing a large portion of the house, appellee also made significant contributions. For seven months prior to the marriage, the parties lived together as husband and wife. During that time, appellee was employed and performed the same duties alluded to above, namely, housekeeping chores and paying

the expenses of maintaining their apartment. It is clear that the purchase of the lot in joint names, the cohabitation and the duties performed by both parties were done in contemplation of marriage. Under these circumstances, then, the entire value of the real estate was marital property and the Order directing an equal distribution of the equity therein was not an abuse of discretion. *Bacchetta v. Bacchetta*, 498 Pa. 227, 445 A.2d 1194 (1982).

It is also appellant's contention that the six-thousand-dollar stock fund with Merrill, Lynch, Pierce, Fenner & Smith was not marital property due to the alleged fact that the full investment was from his pre-marital funds. Specifically, appellant maintains that $2,500.00 in the stock fund originated from proceeds realized by him on the sale of real estate prior to the marriage. The remaining $3,500.00 resulted from his carpentry earnings during marriage.

Although $2,500.00 was accumulated by appellant prior to the marriage, it was placed in a stock fund bearing both parties' names; therefore, it appears that appellant intended to give an undivided one-half interest in these pre-marital earnings to appellee. The creation of a joint interest in a bank account with rights of survivorship is prima facie evidence that the party funding the entire account intended an inter vivos gift. *In re Estate of Gladowski*, 483 Pa. 258, 396 A.2d 631 (1979); *In re Estate of Young*, 480 Pa. 580, 391 A.2d 1037 (1978). In addition to transferring an undivided one-half interest in these assets to appellee as donee, it is also apparent to me that appellant placed these funds in joint names with appellee in contemplation of marriage. Therefore, I consider the real-estate and the two-thousand-five-hundred-dollar portion of the stock fund in the same vein. I am not troubled by the fact that a portion or all of the $2,500.00 might have been earned by appellant prior to cohabitation.

It is neither necessary nor reasonable to expect a spouse in appellee's position to enforce her interest in the real estate and the $2,500.00 through partition. Where parties improve property and convey theretofore solely-owned prop-

erty to joint names in the expectation of marriage, I conceive of no compelling reason why such property should not be considered "marital property." As I alluded to earlier, the definition of "marital property" in § 401(e) of the Divorce Code is not all-inclusive. Furthermore, the purchase or receipt of property by one party prior to marriage, who later transfers that property into joint names with his future spouse prior to marriage, might determine how that property is to be equitably divided, but should not determine whether it is "marital property." Afterall, divorce courts, with their equity powers, are as well-equipped to equitably divide property as equity courts in partition actions.

I, too, am not persuaded that appellant's carpentry work produced the additional $3,500.00 in the stock fund, due to the fact that he alluded to no particular jobs which generated these funds. Nevertheless, assuming such money was generated by appellant alone, his argument still fails. Once again, appellant placed the money in a jointly-owned stock fund. Moreover, he generated the $3,500.00 during the marriage while appellee was the sole wage earner, sole payor of household bills, sole provider of staples and sundries and sole housekeeper. The one-half division of the Merrill Lynch funds correctly reflects these facts.

Next, appellant avers that the six-thousand-dollar payment from his mother to him and appellee was a loan and not a gift; consequently, it was not marital property subject to equitable distribution. A gift is complete where there is delivery, either actual or constructive, and intent to make a gift at the time of delivery. *In re Estate of Koska,* 176 Pa.Super. 519, 108 A.2d 829 (1954).

Appellant's mother, Agnes Beach, gave $6,000.00 to the parties for the costs of constructing the house. Appellant produced no written evidence of a loan such as a promissory note or agreement. Moreover, appellant and his mother were particularly vague when asked whether the six-thousand-dollar loan was to be repaid. None of the money was repaid as of the date of the master's hearing. Further-

more, a transfer of cash from one relative to another is a factor heavily considered when determining donative intent. See *Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819 (1976). Under the facts and circumstances, I agree with the majority that there was no error in the lower court's determination that the six-thousand-dollar payment was a gift.

According to appellant, the court erred in valuing the real estate at $55,000.00; $50,000.00 was a more realistic value. Both parties filed Inventory and Appraisement Statements. In his Statement, appellant valued the real estate within the range of $55,000.00 to $60,000.00; however, he testified before the master that the range was too high. Appellant produced no expert testimony in support of the fifty-thousand-dollar fair market value. Appellee valued the real estate in her Statement at $55,000.00 and confirmed that amount at the hearing. Accordingly, the fifty-five-thousand-dollar determination was based upon credible testimony, an assessment beyond appellate scrutiny.

Finally, appellant avers that he had no life insurance while appellee had substantial life insurance. As a result, appellant wants these facts reflected in the final distribution order.

On the contrary, appellant testified that he was provided some insurance through the Veterans of Foreign Wars and the National Rifle Association. On the other hand, appellee's life was covered by a group life policy by her employer, Westinghouse. It had no cash value. She also had four life insurance policies with face values of $1,000.00, $1,000.00, $500.00 and $150.00, and respective cash surrender values of $137.53, $90.00, $74.45 and $26.08. In light of appellant's vague and contradictory testimony on the face and cash-surrender values of his policies and the minimal cash surrender values of appellee's policies, we find no error in the court's decision not to offset an otherwise equal and equitable division of insurance holdings.

Accordingly, I would affirm.