486 A.2d 401

**Shirley F. MADDEN**

v.

**Raymond L. MADDEN, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 14, 1984.

Filed Nov. 16, 1984.

Reargument Denied Jan. 29, 1985.

Petition for Allowance of Appeal Denied July 22, 1985.

Frederic G. Antoun, Harrisburg, for appellant.

Samuel L. Andes, Lemoyne, for appellee.

Before WICKERSHAM, JOHNSON and HOFFMAN, JJ.

WICKERSHAM, Judge:

This is an appeal from the order of the Court of Common Pleas of Cumberland County which, *inter alia*, awarded alimony to appellee and classified and divided a certificate of deposit as marital property.

Raymond L. Madden, appellant, was sued for divorce by his wife Shirley F. Madden, appellee, in May of 1981. They had been married approximately twenty-five (25) years and had one minor child still left at home, David, then aged 9. Appellee also requested child support for David, alimony pendente lite, alimony, counsel fees, and equitable distribution of the marital property. Appellant consented to the divorce and to appellee's custody of David,[1] but he disputed the economic issues. The lower court entered an order requiring appellee to pay appellant $70.00 per week child support. Thereafter, the court entered another order directing appellee to pay an additional $55.00 per week alimony pendente lite and $500 in counsel fees.

The lower court appointed a Master, before whom the parties, their attorneys, and witnesses appeared in July of 1982. On September 28, 1982, the Master issued his report, to which both parties filed exceptions.[2] On June 17, 1983, the lower court *en banc*, after argument on the exceptions to the master's report, handed down its opinion and the following order:

## ORDER OF COURT

AND NOW, this 17th day of June, 1983, it is ordered, adjudged and decreed that

1. The certificate of deposit is marital property and is to be distributed one-half to the plaintiff in the amount of

---

1. In March of 1983, appellant filed a complaint for partial custody and visitation following difficulties with appellant's visitations with David. The record does not show the result, if any, of that complaint.

2. An examination of the record shows that a number of other petitions were filed by the parties in this litigation, but none are directly involved in the appeal.

$13,500 and one-half to the defendant in the amount of $13,500.

2. The defendant shall pay to the plaintiff alimony at the rate of $25.00 per week for a period of five (5) years. The above sum shall be payable through the Domestic Relations Office of Cumberland County.

3. There is awarded to Shirley L. Madden the following marital property:

[A list of seven items of property distributed to appellee followed].

4. Custody of David Madden, minor child of the parties, shall remain in Shirley L. Madden until further order of the court.

5. There is awarded to Raymond L. Madden the following marital property:

[A list of thirteen items of property distributed to appellant followed].

6. The award to the plaintiff of additional counsel fees of $1,000 is reversed. Each party to pay his or her own appraisal costs and one-half of the master's fee.

It was from the above order that appellant filed this timely appeal.

Appellant raises two issues on appeal:

1. Does a gift of bonds to the husband from his mother ever cease to be a gift and become marital property to be divided and awarded to the wife?

2. Is any award of alimony to a wife who is operating and has operated her own beauty salon as a licensed cosmotologist for over twenty years proper?

Brief for Appellant at 5.

■■■ Generally, an abuse of discretion standard of review applies in cases concerning the economic awards of alimony, counsel fees, and property distribution under the Divorce Code, 23 P.S. § 101 *et seq.* *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983). Equitable distribution is within the discretion of the trial court and its decision will not be disturbed absent an abuse of that discretion. *Estep*

*v. Estep,* 326 Pa.Super. 404, 474 A.2d 302 (1984); *Kleinfelter v. Kleinfelter,* 317 Pa.Super. 282, 463 A.2d 1196 (1983); *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983). In reviewing such awards, we must remember that the master and the trial court were free to accept or reject the parties' testimony. *Estep v. Estep, supra; Gee v. Gee, supra.* Similarly, a trial court's order concerning an alimony award should be reviewed only for an abuse of discretion. *Eck v. Eck,* 327 Pa.Super. 334, 475 A.2d 825 (1984); *Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984); *Ruth v. Ruth, supra; Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983).

With these considerations in mind, we now turn to appellant's issue. Appellant first questions the lower court's classification of the certificate of deposit as marital property. During the parties' marriage, appellant's mother purchased a number of United States savings bonds with her own funds and placed them in the joint names of herself and appellant. Following her death in 1978, ownership of these bonds vested entirely in appellant. Thereupon, appellant cashed in the bonds and used the cash proceeds to purchase new savings bonds, which he placed in the joint names of himself and appellee. He brought the new savings bonds home, showed them to appellee, and placed them in a safe which the parties kept in the house and to which both parties had access. Thereafter, when problems arose between the parties, appellant removed appellee's name from the bonds, cashed them in, and purchased a certificate of deposit in his name only. The amount involved is approximately $27,000.00. The lower court determined that the certificate of deposit was marital property and thus, subject to equitable distribution.

23 P.S. § 401(d) allows the court to equitably divide or distribute marital property. 23 P.S. § 401(e) and (f) discuss the concept of marital property and state, in applicable part:

> (e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

*     *     *     *     *     *

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

\* \* \* \* \* \*

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

Thus, despite the fact that the certificate of deposit was titled in appellant's name only, it is presumed to be marital property, unless it was acquired by one of the seven methods listed in section (e). Appellant argues that the certificate of deposit was a gift from his mother and thus excludable under 23 P.S. § 401(e)(3).

■ Upon a careful review of the record, we agree with appellant that the savings bonds were *originally* acquired by appellant as a gift from his mother when she transferred them from her name to joint ownership with her son. As the lower court noted, this "gift" status continued when the bonds passed to appellant upon his mother's death. However, when appellant cashed in those bonds and used the proceeds to purchase *new* bonds held in the joint names of "Raymond L. Madden or Shirley F. Madden," the bonds lost their "gift" status and took on the status of property by the entireties, owned by both parties and not amenable to appropriation or termination by either party for his own benefit.

[W]here [property] is purchased by a husband and the certificates are made out in the names of both the husband and wife, even though the certificates are delivered to the husband and retained by him, the gift to the wife is complete. The gift is presumed by reason of the nature of the joint tenancy with is peculiar to the husband and wife relationship and delivery to the husband is con-

sidered to be delivery to both the husband and the wife.... Where property or an account is placed in the names of a husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband.... The placing of the property in both names, without more, creates an estate by the entireties.... In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary.... Even where a husband places the property in both names without his wife's knowledge or consent, a valid gift occurs.

*In re Holmes Estate,* 414 Pa. 403, 406, 200 A.2d 745, 747 (1964) (citations omitted). *See* also *Cohen v. Goldberg,* 431 Pa. 192, 244 A.2d 763 (1968); *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966); *In re: Cochran's Estate,* 398 Pa. 506, 159 A.2d 514 (1960); *Margarite v. Ewald,* 252 Pa.Super. 244, 381 A.2d 480 (1977).

Not only were the new savings bonds property by the entireties, but more to the point, they took on the additional status of marital property.[3] The bonds were "property acquired by either party during the marriage" and were not excludable under any of the exclusions listed in 23 P.S. § 401(e). As such, they were subject to equitable distribu-

---

3. We note appellant's reliance on *Estep v. Estep,* 326 Pa.Super. 404, 474 A.2d 302 (1984). However, we do not feel that *Estep* supports appellant's position that the bonds never became marital property. In *Estep,* the husband placed into a joint account $2,500 representing the proceeds from a sale of property which he had owned prior to the marriage. Despite the presence of the money in the joint account, this court held that the money was not marital property because it was excludable as "property acquired in exchange for property acquired prior to the marriage" under 23 P.S. § 401(e)(1). Such is not the situation in the instant case. There is no testimony in the record that appellant owned the bonds before his marriage, or that he came into the marriage with $29,000.00 worth of bonds. Rather, both parties testified that he came into the marriage with a car and some money ($3000 according to appellant's testimony) for a down payment on their house.

tion rather than mere partition. *Platek v. Platek,* 309 Pa.Super. 16, 454 A.2d 1059 (1982).

Appellant argues that appellee's evidence concerning joint ownership of the bonds was so inconclusive as to be incredible. We disagree. Appellee testified that appellant obtained the original bonds upon his mother's death; that he "changed" them to their joint names; that he brought them home and showed them to her; that he put them in their home safe; that she had equal access to that safe; and that he removed them in June of 1980, cashed them in and turned them into a certificate of deposit in his name only. Appellant never contradicted appellee's testimony on the bonds, or offered any testimony denying that he transferred the bonds into joint names or that he made a gift of the bonds to appellee in 1979. No clear and convincing evidence was offered to overcome the presumption that an entireties estate was created when appellant bought new bonds and put them in both parties' names. Nor did the estate change simply because appellant changed the form of the estate from savings bonds to a certificate of deposit. 23 P.S. § 401(f). Furthermore, since these bonds were acquired by the parties during their marriage, the bonds were also marital property and thus subject to equitable distribution. We find no reason to disturb the lower court's decision regarding the certificate of deposit.

Appellant also argues that the award of alimony to appellee is "unjust, unconscionable, [punitive] and confiscatory." Brief for Appellant at 20. He claims that the award of $25.00 weekly to appellee is excessive because appellee has sufficient income or potential income with which to support herself. We find appellant's arguments to be unsupported by the record.

23 P.S. § 501(a) allows the award of alimony only if the receiving party (1) lacks sufficient property to provide for his/her reasonable needs and (2) is unable to support himself/herself through appropriate employment. Section 501(b) sets forth various factors to be considered in making an alimony decision. The Master herein recommended that

appellee receive $30.00 weekly for an indefinite period. The lower court, however, in view of its award to appellee of half the certificate of deposit, set the alimony at $25.00 weekly for five years. The lower court explained:

> [Appellee] operates a beauty salon in her home, which allows her to work and, at the same time, raise her son, care for the home, and cook dinner for her family. It also saves her the time and expense of commuting to work, and the expense of child care. She works approximately forty hours each week, and has built up a steady cline-telle [sic] over the past twenty years. Her only formal training for this occupation was in 1955, and she has testified that she has no training or experience in fashioning the newer hairstyles required in professional beauty salons. (N.T. 26–27, 46–49). We find that [appellee's] employment is more than appropriate for her training and ability, and that it does not alone provide a reasonable amount of support for her. Testimony regarding [appellee's] 1982 income shows an *approximate* net annual income of only $4,000, while net income in 1980 was only little more than $2,000. Taking into account the fact that some of the expenses of the beauty shop cover the expenses of the rest of the home and have already been netted out of [appellee's] income, and the fact that her son's expenses will be covered by child support, we find that alimony should be set at $25.00 each week to allow [appellee] to pay her expenses. [Appellant] at this time is gainfully employed with a large corporation, enjoys net weekly income of $266.00, and is covered by an employee benefit plan which includes retirement and death benefits; the alimony payments will not be an unreasonable burden upon him.

Lower ct. op. at 6–7. At the time the alimony order was entered by the trial court, the court had already conducted three separate hearings into the income and expenses of the parties,[4] and had the evidence produced at the master's

4. On October 29, 1981, the lower court held a hearing concerning appellee's request for alimony pendente lite. On November 9, 1981, it

hearing before it as well. Our review of the record supports the findings in these various opinions and reports. Further, we find no real substance to appellant's claims of abuse of discretion by the lower court in determining the necessity for and/or amount of alimony. He does not cite to us any relevant case law, but instead relies on generalizations in his attempt to persuade us that the lower court abused its discretion. We are not so persuaded.

Accordingly, the order of the court below is affirmed.

issued a five-page opinion examining the economic circumstances of the parties. Thereafter, at appellant's request, the court conducted another hearing into the incomes and expenses of the parties and, by order dated March 17, 1982, refused to reduce the amount of alimony pendente lite previously ordered. A third hearing concerning the incomes and expenses of the parties was held in April of 1983.