J-A27003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY ELIZABETH CHANDLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM CHANDLER | : | |
| | : | |
| Appellant | : | No. 1660 EDA 2019 |

Appeal from the Order Entered February 25, 2019
in the Court of Common Pleas of Chester County
Civil Division at No(s):  No. 2014-07613-DI

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                         April 1, 2020

William Chandler ("Husband") appeals from the order that adopted the master's recommendation as to equitable division of the marital estate of Husband and Mary Elizabeth Chandler ("Wife").  We affirm.

The trial court succinctly summarized the underlying facts as follows.

> The parties in this matter were married on June 27, 1969. . . . The parties have two adult children together.  Wife was born in 1947 and Husband was born [in] 1943.  Wife is in good health, while husband suffers from Charcot-Marie[-]Tooth Syndrome, which is a progressive genetic disease that causes disintegration of connective tissue.  He walks with a cane and has undergone nine surgeries. He suffers from continuing pain, weakness in the limbs and extremities, deformed feet and atrophied hands.
>
> During the marriage, Husband worked as a financial executive for General Electric, Parker Pen and Hunt Corporation. The family moved frequently to further his career.  He retired when he was 58 years old.  He currently receives a total monthly income of $5,529.00 from a Hunt Corporation Supplemental

---

[*] Retired Senior Judge assigned to the Superior Court.

> Executive Retirement Plan, a Hunt Corporation Annuity, a General Electric pension, and Social Security benefits. Wife was primarily responsible for taking care of the parties' children, who also suffer from Charcot-Marie-Tooth Syndrome. She currently tutors 12-15 hours per week for $25.00 an hour. She also receives social security benefits of $780.00 per month. . . .

Trial Court Opinion, 2/25/19, at unnumbered 1-2.

In the summer of 2014, the parties separated and Wife filed for divorce. However, Wife returned to the marital residence in October seeking to reconcile. Husband, who had found it "bothersome" that Wife had opted to keep her inheritance from her parents in a separate account, conditioned reconciliation upon Wife's agreement to remove her name from a joint Morgan Stanley account in which Husband had placed money that he had inherited from his parents ("the inheritance account"). Husband's brief at 6. On December 31, 2014, Wife signed a letter to Morgan Stanley requesting to remove her name from the account and to "make this account an individual account in [Husband]'s name only." Trial Court Opinion, 2/25/19, at unnumbered 4.

The parties separated finally on June 15, 2017, and litigation of the pending divorce complaint resumed. A special master was appointed, and a hearing conducted on February 8 and 9, 2018. The master issued a report and recommendation on July 19, 2018, determining that the marital estate of $1,371,171 should be divided 50-50 and that no award of support or counsel fees was warranted.

Husband and Wife each filed exceptions. By order of February 25, 2019, the trial court denied both parties' exceptions and entered the master's recommended order. Husband filed a timely appeal on Monday, June 3, 2019, after the trial court rendered the prior order final on May 3, 2019, with the entry of the divorce decree.[1] Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband presents two questions for this court's resolution:

> 1. Whether the [trial] court erred in failing to uphold a transfer of assets effected while divorce proceedings were pending as an agreement effective under 23 Pa.C.S. [§] 3501.
>
> 2. Whether the court erred in awarding an equal split of assets between the parties in a setting where Wife's health was good and she worked part-time while Husband was afflicted with a progressively disabling disease, which forced his early retirement and has resulted in numerous surgeries.

Husband's brief at 4 (unnecessary capitalization omitted).

We consider Husband's issues mindful of the following standard of review:

> [A] trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was

_____

[1] **See**, **e.g.**, **Wilson v. Wilson**, 828 A.2d 376, 378 (Pa.Super. 2003) (providing equitable distribution order is interlocutory and unappealable until rendered final by entry of divorce decree).

manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

Husband first contends that the trial court erred in holding that the inheritance account was marital property. **See** Husband's brief at 11-18. Preliminarily, we review the legal principles applicable to consideration of Husband's contentions.

"All real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety." 23 Pa.C.S. § 3501(b). The presumption may be overcome by proof of a statutory exception. One such exception is property "acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property." 23 Pa.C.S. § 3501(a)(3). However, "even an inheritance, normally precluded by definition from distribution, is nevertheless subject to treatment

as marital property where it had been placed into a joint account." ***Fitzpatrick v. Fitzpatrick***, 547 A.2d 362, 367 (Pa.Super. 1988).

Another statutory exception to the marital property presumption is property excluded from the martial estate by agreement of the parties. 23 Pa.C.S. § 3501(a)(2). Such an agreement is subject to the same rules as all other contracts. ***See Conway v. Conway***, 209 A.3d 367, 371 (Pa.Super. 2019). "[U]nder the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties." ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004). As our Supreme Court has summarized:

> In cases of a written contract, the intent of the parties is the writing itself. . . . When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Id***. (citations omitted).

"In the absence of an integrated, written agreement, . . . the determination of the contents of a mixed written and oral contract is for the factfinder unless there is no conflicting evidence." ***Drum v. Shaull Equip. & Supply Co.***, 787 A.2d 1050, 1063 (Pa.Super. 2001) (cleaned up).

> It is . . . well settled that in order for an enforceable agreement to exist, there must be a meeting of the minds, whereby both parties mutually assent to the same thing, as evidenced by an offer and

its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent.

*United Envtl. Grp., Inc. v. GKK McKnight, LP*, 176 A.3d 946, 963 (Pa.Super. 2017) (internal quotation marks omitted).

As noted above, the property at issue in the instant case is money that Husband inherited from his parents. There is no dispute that Husband placed the inheritance into an account owned jointly with Wife. *See* Husband's brief at 11. Husband further acknowledges that this Court's precedent provides that the money thereby became marital property. *See id*. (citing *Madden v. Madden*, 486 A.2d 401, 404 (Pa.Super. 1984) ("The placing of the property in both names, without more, creates an estate by the entireties.") (internal quotation marks omitted)).

Husband's argument is that the inheritance money was subsequently converted back into his separate property when Wife agreed to remove her name from the account. *See* Husband's brief at 11, 14-16. With no more than a Latin maxim and a rhetorical question to support his position, Husband contends that if putting separate funds in a joint account converts them to marital property, then agreeing to place marital funds into one spouse's individual account should have an equal and opposite effect. *Id*. at 15.

The master addressed the evidence on this issue and Husband's contentions as follows.

> Wife filed for divorce on July 25, 2014 and the parties acknowledge this date as their date of separation. In October 2014, Wife returned to the marital residence and sought to reconcile with Husband. Both parties were represented by counsel at this time. Husband told Wife, that if she did not sign over his [inheritance account] from joint names to his name alone, that he would not take her back and that he would file for divorce. Wife testified that she signed the letter in 2014 transferring [the inheritance account] from joint names to Husband's name alone because she believed that their daughter was siding with Husband, and that Wife would not be able to see her granddaughter unless she reconciled with Husband.

> On December 31, 2014, Wife signed a letter addressed to Morgan Stanley, asking that the account be placed in Husband's name alone. The letter reads, in its entirety, as follows:

>> Dear Gail: Please remove Mary (Betsy) Chandler as joint account owner and make this account an individual account in Bill's name only. Thank you for your attention to this matter.

> This letter was signed by Wife on December 31 , 2014 and by Husband on January 2, 2015.

> The letter of instruction to Morgan Stanley is not a waiver of Wife's interest in this account. Merely transferring the title of an account from joint names to Husband's name alone is insufficient to strip Wife of her claim to marital property. . . . [The inheritance account] is presumed to be marital regardless of title.

> The master finds that Wife would have had to expressly waive her interest in equitable distribution if that was in fact her intent. When the account was transferred from joint names to Husband's name alone, there was no waiver of Wife's equitable distribution rights. Wife clearly testified that she did not intend to waive her rights to this account when she signed the letter to Morgan Stanley on December 31 , 2014.

Master's Report, 7/19/18, at 16-17 (footnote, citations, and unnecessary capitalization omitted).

In ruling upon Husband's exception, the trial court likewise concluded that "[w]hile it is clear that [Wife] intended to have her name removed from the account, there is no evidence that she agreed to waive her interest in the account." Trial Court Opinion, 2/25/19, at unnumbered 4. Absent evidence that Wife also agreed to waive her interest in it, it remained marital property. *Id*. at unnumbered 5.

We discern no error of law or abuse of discretion in the trial court's determination. Husband failed to produce evidence to establish that there was a meeting of the minds as to any more than Wife's agreement to remove her name from an account so that their marriage could be reconciled. *Cf. Sutliff v. Sutliff*, 543 A.2d 534, 539 n.1 (Pa. 1988) (rejecting challenge to the master's determination where the evidence supported a finding that one-half of the marital residence became the wife's separate property finding after the husband made "an interspousal gift in the form of a conveyance made in 1978 by [the husband] to his wife, in her sole name, of a one-half interest in the marital residence, which, until then, had been held as tenants by the entireties"). With no written agreement beyond the letter to Morgan Stanley itself, the intent of the parties was an issue for the fact finder, and the factual findings here are supported by the record. *See* N.T. Hearing, 2/8/18, at 101-02. No relief is due on Husband's first issue.

Husband's remaining allegation is that the trial court erred in awarding an equal split of the marital assets given the disparity in the health and earning capacities of the parties. Husband's brief at 4. We review the applicable legal principles before delving into the specifics of Husband's arguments.

> In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.A. § 3502 . . . . These factors require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship. The section 3502 factors are not a simple formula, rather they serve as a guideline for consideration. The facts of a particular case mandate how the section 3502 factors will be applied.

*Gates v. Gates*, 933 A.2d 102, 105 (Pa.Super. 2007). The factors enumerated in § 3502 are as follows.

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

In reviewing a trial court's distribution order, this Court will not engage in a factor-by-factor review of the trial court's rulings. As we have explained:

We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand.

*Lee v. Lee*, 978 A.2d 380, 383 (Pa.Super. 2009) (cleaned up). We reiterate that an abuse of discretion in this context will not be found by this Court unless Husband establishes by clear and convincing evidence that "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Carney*, *supra* at 131 (cleaned up).

Here, the master went through the statutory factors *seriatim*, and concluded that each was neutral, inapplicable, or, in five instances, favored Wife. **See** Master's Report, 7/19/18, at 29-34. Nonetheless, the master recommended that Husband and Wife receive equal shares of $668,585.50 each, plus fifty percent each of the marital share of Husband's pensions. **Id**. at 34. The trial court, without much elaboration, indicated that the master properly considered the universe of relevant information, and agreed with the master that an equal split was appropriate. Trial Court Opinion, 2/25/19, at unnumbered 3.

Husband acknowledges that a fifty-fifty split would normally be appropriate following a long marriage when the parties are both retired. **See** Husband's brief at 16. However, he posits that the vastly disparate health needs of the parties in this case renders equal distribution of the assets inappropriate. He details at length the ways in which he suffers from his health condition, compares this situation to the finding that Wife is in good health and working part time, and concludes that "it would seem clear that the prognosis[e]s for long term care needs are far from equal." **Id**. at 18. Husband couples these presumptive long-term expenses with the fact that his ability to fund them is diminished by his being forced to share the inheritance he received from his parents, while younger and healthier Wife is retaining her inheritance, to suggest that relief is warranted. **Id**.

Wife counters that "Husband did not present any evidence identifying that the costs for his healthcare exceeded that which was covered by his health insurance or that his needs could not be met by an equal division of the marital estate." Wife's brief at 19. Wife suggests that Husband's argument, in essence, is that the trial court should have concluded that factor number three not only weighed in Husband's favor, but weighed so heavily in his favor that an equal division of the marital estate was inequitable under the circumstances. *Id*. at 17.

We agree with Wife. While Husband presents a reasonable argument that his health militates in favor of awarding him a larger share, we cannot on this record disturb the weight that the trial court applied to the factors. *See*, *e.g.*, *Busse v. Busse*, 921 A.2d 1248, 1260 (Pa.Super. 2007) ("The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them." (cleaned up)). Stated plainly, Husband simply has not met his heavy burden of establishing that the trial court abused its discretion in adopting the master's suggested fifty-fifty split. Husband pointed to no misapplication of the law, manifest unreasonableness, or refusal to consider evidence. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/1/20