179 N.J. Super. 344 (1981)
432 A.2d 113
RUTH M. DALY, PLAINTIFF-RESPONDENT,
v.
ALLAN A. DALY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 1981.
Decided June 4, 1981.
*347 Before Judges BOTTER, KING and McELROY.
Lucid, Jabbour & Pinto, attorneys for appellant (Harry J. Pinto, Jr. of counsel; R. Jerome Jabbour on the brief).
Farrell, Curtis, Carlin & Davidson, attorneys for respondent (Edward J. Farrell on the brief).
The opinion of the court was delivered by KING, J.A.D.
This appeal raises an interesting point on the mechanics of equitable distribution of the marital home where the ex-wife remains in possession pending the raising of the children, her remarriage or some other event, but the ex-husband receives a present share of the asset. The ex-husband defendant appeals, complaining that securing his 50% or $41,000 interest in the asset by a second mortgage with payments of all principal and 4% simple interest deferred for possibly ten years or longer was manifestly unfair and legal error.
This factual pattern is probably recurrent if not typical. The parties were in their "mid to late thirties" and had been married for 14 years at the time of trial in August 1979. Their three children were then 12, 10 and 8. During the marriage the parties enjoyed "modest middle-class standards of living by Morris County levels." Both plaintiff-mother and defendant-father *348 are employed, she as a nurse and he as a stock broker. Plaintiff earns about $14,500 annually, defendant about $31,000.
The trial judge found that the marital home in suburban Mendham was purchased for less than $25,000 in 1966 and had appreciated to $105,000 at the time of trial. The property needed repairs of $10,000 but the judge found "nonetheless, even without the repairs being made, the property value is $105,000." Allowing for the mortgage and a real estate commission, the judge found a distributable interest of $41,000 to each party. All agreed that plaintiff should remain in the home as the custodial parent of the school-age children. Therefore, defendant was ordered to execute a deed to plaintiff. To protect defendant's $41,000 interest, plaintiff was ordered to execute a second mortgage at 4% simple interest, with all payments deferred until plaintiff's remarriage, her cohabitation with another man, or sale, or emancipation of the youngest child, an event ten years at least in the future. Because of friction between the parties the judge said that plaintiff "ought to have complete control over the house." A support order of $600 a month for the three children was entered and is not challenged on this appeal.
In setting a 4% interest rate the judge thought the "rate ought to reflect to a certain extent, not only current rates in the marketplace, which are at all time highs, but also should consider what the likely appreciation of the property may be." The judge was troubled that a 10% interest rate over a ten-year period would yield the sum of $41,000 if all payments were deferred until the youngest child reached age 18. This prospect of having the interest match the principal at the end of the "maximum period anticipated ... [struck] the court as being somewhat unreasonable." Without any guidance on an interest rate, the judge "took into consideration" the need for repairs, carrying charges, insurance, utility bills, maintenance costs and heat, and settled on the 4% simple interest figure.
*349 Appellant contends that a 4% deferred return on a capital asset presently valued at $41,000 is totally unreasonable under present economic conditions, whether measured by the modest 8% rate in court rules (R. 4:42-11(a))[1], the present rate on first mortgages which hovers at about 16 1/2% [Editorial, 107 N.J.L.J. 236 (1981)], the present prime rate of 20%, or any other reasonable investment indicator.[2] Defendant contends that this meager, fixed return is woefully disproportionate to his anticipated appreciation of the asset, an estimated 10% a year. Defendant further urges that the award of child support recognizes, to some extent a contribution to the maintenance of this asset.
The only pertinent case law discussing the subject is Gemignani v. Gemignani, 146 N.J. Super. 278 (App.Div. 1977). We there stated:
Thus, as here, where the primary asset is the marital residence and the judge, for good reason, determines that it should neither be immediately sold nor that joint title should be retained pending a future sale, but rather that the wife should continue to reside therein for either an extended or indefinite period, the appropriate procedure to follow, after a proper valuation of all of the assets, is for the judge to determine the percentage of total value to which each spouse is equitably entitled. To the extent that assets awarded to the husband are insufficient to reach that percentage, title to the residence should be ordered conveyed to the wife subject to her giving a mortgage in favor of the husband in the amount of the difference. The terms of that mortgage should include interest at a rate to be fixed by the court, both interest and principal not payable until a designated future time, for example, six months following the emancipation of the youngest child. Such a mortgage technique, or some variation thereof, will provide sufficient flexibility to accommodate both the financial entitlements and the personal and family circumstances of the parties. [Id. 146 N.J. Super. at 284.]
We consider these general principles both sound and practical. But predicting fluctuations in interest rates and the appreciation, or depreciation, of single-family residential real estate over *350 the next ten years is an unsettling prospect for economists, lawyers, judges or even soothsayers.
Considering the double-digit inflation of recent years, a 4% return on an asset frozen for possibly the next ten years or more is not a realistic and fair return. Defendant, under duress of circumstances, is surrendering present enjoyment of his $41,000 asset. He should recover a greater return or share in the potential for appreciation, or the risk of possible depreciation, in exchange for this postponed enjoyment of the asset. In the present situation we conclude that transfer of title to the plaintiff with reservation of an equity interest in the defendant is most appropriate. Where the property is likely to be sold in a shorter time than in the present case, a second mortgage with a realistic and perhaps a flexible interest rate, tied to a recognized indicator may be appropriate, e.g., Peterson v. Peterson, 85 N.J. 638 (1981).
Often, as here, the principal asset subject to distribution is the marital residence. Underlying the permission to the wife to remain in the home is the joint duty of the parties to provide suitable shelter for the children. See Lynn v. Lynn, 165 N.J. Super. 328, 340 (App.Div.), certif. den. 81 N.J. 52 (1979). A correlative is the recognition that available economic resources are usually not sufficient to provide a comparable residence if the asset is liquidated. The husband's realization of his distributive share is delayed, perhaps until emancipation of the youngest child. This delayed realization must be recognized by a reasonable rate of interest, certainly more than 4% in today's economic conditions, or an equity interest in the asset. Imaginative counsel and trial judges must always consider the interrelationship between alimony, child support and the cost of maintenance and the ultimate disposition of the marital home in arriving at contested or consent judgments, just as they do in negotiated property settlement agreements. See Painter v. Painter, 65 N.J. 196, 218 (1974). Any final decisions should recognize (1) a fair return for delayed realization, (2) or an equity interest, and (3) *351 the extent of each party's contribution to the protection and enhancement of the asset prior to sale.
In this case we hold the following view with respect to the expenses incurred up to the time of sale of the property. Plaintiff, as occupant of the home, will be responsible for ordinary and reasonable maintenance. Any structural repairs or replacement of capital items are to be shared on the same proportionate basis as the distributive shares of the net equity. In the present situation, where both parties are employed and child support is paid by defendant, we agree that plaintiff should make the mortgage payments. At the time of distribution plaintiff should receive credit against defendant's share for one-half of the principal reduction of the mortgage and insurance premiums paid to protect the asset. Interest on the mortgage, utility payments and real estate taxes are in the nature of cost of occupancy or rent and are not reimbursable to plaintiff. At the time of sale defendant will receive his one-half share of the net proceeds less the above credits to plaintiff.
We therefore remand this case to the trial judge for entry of judgment fixing defendant's interest in the property at one-half of the net equity in the property after allowance for appropriate credits, including costs of sale, as expressed herein. Because the trial judge found that retention of joint title was inappropriate, plaintiff will retain full title and defendant's equity interest will be through and subject to that judicial decree alone. The judgment will constitute a lien on the property to protect defendant's interest.
Finally, we reject defendant's contentions that the award of $2,000 counsel fees to the plaintiff was unreasonable. R. 2:11-3(e)(1)(A).
Reversed and remanded.
NOTES
[1] Effective April 1, 1975; the previous rate was 6%.
[2] The criminal usury rate is now 30%. L. 1981, c. 104, § 1(a)(2), effective March 31, 1981. Other recent legislation has substantially loosened restrictions on commercial lenders in this State. L. 1981, c. 103, effective date also March 31, 1981. See Summary, 107 N.J.L.J. 400.