527 A.2d 122

**Harold L. BARNER, Appellant,**

v.

**Carol A. BARNER.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1987.

Filed June 1, 1987.

2

Michael K. Hanna, Lock Haven, for appellant.

H. Denning Mason, III, State College, for appellee.

4

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

Plaintiff/appellant timely appeals from the lower court Order dismissing his exceptions to the report and recommendations of the hearing officer rendered in response to appellant's request for equitable distribution, alimony pendente lite, alimony, custody and child support, all raised in his complaint in divorce, filed July 20, 1984, and the amendment thereto. The parties received a bifurcated divorce decree on April 2, 1985 with the lower court reserving jurisdiction on the above related issues.

Although we agree with defendant/appellee, that appellant's appellate brief's statement of the case is inadequate and fails to follow the precepts mandated by Pa.R. A.P. 2117(a), we will not quash his appeal for that reason. The defects appearing in appellant's brief are not "substantial" within the meaning of Pa.R.A.P. 2101 and do not mandate our quashing the appeal.

Appellee also contends that dismissal is warranted because of appellant's failure to comply with Pa.R.C.P. 1920.-55(a), which provides:

**Rule 1920.55. Master's Report. Notice. Exceptions. Final Decree**

(a) Within ten days after notice of the filing of the master's report has been mailed, exceptions may be filed by any party to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. *Each exception shall set forth a separate objection precisely and without discussion.* Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters. (Emphasis added).

All of appellant's exceptions are couched in the following manner: "The Hearing Officer erred in finding that:" followed by a direct quote from the master's report. (Record

item # 14). Appellee claims these responses are improper as appellant failed to explain what he would have the master find in their place.

In support of his claim, appellee argues that the Supreme Court's Opinion in *Estep v. Estep*, 508 Pa. 623, 500 A.2d 418 (1985), "implicity" approved detailed exceptions by quoting exceptions to a master's report, which stated the master's finding, the excepting party's desired finding and the general reason why the excepting party's position is correct.[1] However, the *Estep* Court never addressed the issue of what constitutes a proper exception under Pa.R.C.P. 1920.-55 and the fact that the Court approved of certain exceptions without comment cannot be construed to mean that those exceptions are the exclusive model for what constitutes a proper exception under Rule 1920.55.

Here, we must determine whether appellant's exceptions are drafted within the meaning of Rule 1920.55(a)'s requirement that "[e]ach exception shall set forth a separate objection precisely and without discussion." In interpreting the Rules of Civil Procedure, we are to consider the prior practice, including other rules upon the same or similar subjects, in the area governed by the rule in question. Pa.R.C.P. 127(c)(5); *Union National Bank and Trust Company of Sounderton v. Walker*, 315 Pa.Super. 37, 461 A.2d 623 (1983). We find that our earlier decision in *Dudash v. Dudash*, 313 Pa.Super. 547, 460 A.2d 323 (1983),

---

1. For example, the two exceptions quoted by the Supreme Court in *Estep, supra*, 508 Pa. at 627–28, 500 A.2d at 420, read as follows:
 1. The learned Master erred in making finding of fact number 5 in that the evidence shows that Plaintiff has and should have a substantially greater interest in the parties' real estate than Defendant.
 * * * * * *
 4. The learned Master erred in making finding of fact number 15 in that the evidence shows that Plaintiff made the entire contribution to the Merrill Lynch account, and said contribution was totally ignored by the Master, that the $6,000.00 paid to Plaintiff by Mrs. Beach was a loan and not a gift, and that Plaintiff's contribution to the parties' real estate was substantially greater than Defendant's for Plaintiff not only provided a significantly greater contribution to said house financially and by his skills as a workman, but he also assisted in the support of the parties during the period of construction.

dealing with Pa.R.C.P. 1518, is controlling in this case. Although Rule 1518 was rescinded effective January 1, 1984—as part of a series of amendments abolishing the distinction which existed in post-trial practice between actions at law and actions in equity[2]—case law interpreting its provision is applicable to Pa.R.C.P. 1920.55(a) because of the great similarity in language both rules share. Former Rule 1518 provided as follows:

**Rule 1518. Exceptions [Rescinded]**

Within twenty (20) days after notice of the filing of the adjudication, exceptions may be filed by any party to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, to the decree nisi or in cases where requests for findings of fact or conclusions of law have been submitted by leave of court to a failure or refusal to find any matter of fact or law substantially as requested. *Each exception shall set forth a separate objection precisely and without discussion.* Matters not covered by exceptions are deemed waived, unless, prior to final decree, leave is granted to file exceptions raising these matters. (Emphasis added).

Thus the format for exceptions under the two rules is identical, as illustrated by the emphasized portions of both rules above.[3]

In *Nord v. Devault Contracting Company, Inc.,* 460 Pa. 647, 334 A.2d 276 (1975), the Supreme Court held that a general exception to an entire Order and Decree of the lower court failed to comply with Pa.R.C.P. 1518's requirement that exceptions state objections "precisely" and thus was entirely ineffective. In *Dudash, supra,* we expanded on this ruling by the Supreme Court in holding that exceptions which simply stated that the excepting party excepts

**2.** The Note to Pa.R.C.P. 1518 refers to Pa.R.C.P. 227.1. The 1983 Explanatory Comment (Introduction) to Rule 227.1 describes the changes in practice undertaken by the amendments to the rules of civil procedure.

**3.** Likewise, Pa.R.C.P. 1910.12(e) dealing with exceptions to a hearing officer's report in judicial districts adopting the alternative support hearing procedure also has the identical language describing the proper content of an exception.

to a particular finding of fact or conclusion of law by number, followed by a direct quote of that finding or conclusion, were adequately done under Pa.R.C.P. 1518.[4] We concluded, in *Dudash, supra,* 313 Pa.Superior Ct. at 552, 460 A.2d at 325, that such exceptions were "separately and concisely stated with a precise reference to the matter to which objection is made" in full compliance with Pa.R.C.P. 1518's requirement.

■ Like former Rule 1518, Pa.R.C.P. 1920.55 requires only that each exception set forth a separate objection and that the objection be stated precisely and "without discussion". Appellant has set forth only one separate objection in each exception. In quoting the finding of fact he found objectionable, appellant could not have been more precise. Since Rule 1920.55 specifically prohibits an excepting party from discussing his objections in the exceptions, we find that by going no further appellant's exceptions are in compliance with the rule. Therefore, we find meritless appellee's argument that appellant's exceptions were insufficient. However, exceptions set forth in a more detailed format such as those used in *Estep, supra,* which pinpoint the exact objection and its basis without discussion or attachments, are preferable because their clarity and greater precision allows more meaningful judicial review with less risk of misconstruing the nature of the objection. We now turn to appellant's claims on appeal.

Based on the hearing officer's recommendations, the lower court awarded appellant child support from appellee in the amount of $20 per week for the support of the parties' minor child, Matthew Barner, age nine (9), and ruled that appellee has satisfied her duty to provide support for the parties' other child, Jeffrey Barner, age eighteen (18), and

---

4. For example, one of the exceptions quoted in *Dudash, supra,* 313 Pa.Superior Ct. at 550, 460 A.2d at 325, reads as follows:
 3. Plaintiff excepts to finding of fact number 2:
 "At sometime prior to July 19, 1974, the plaintiff orally agreed to convey to her son, the defendant, a portion of the said premises 'west of the road' upon which portion stood a garage later *to be* converted by the defendant into his house."

that no further sum is due or owing for his support. Appellant claims that the child support awarded should have been effective from the date of his filing the complaint in divorce, July 20, 1984, and not merely retroactive to the filing of his subsequent "Petition for Support," as the lower court ordered. The certified record on appeal discloses a disconcerting irregularity in the filing procedure employed by appellant below. The hearing officer and trial judge fixed the filing date of the appellant's petition for support as being May 10, 1985. As stated by the hearing officer in his report:

> The Hearing Officer notes that the petition for support in this matter is dated May 10, 1985. The exact date of the filing of the document is not disclosed on the document ... Mr. Barner would thus be entitled to child support ... from May 10, 1985.
>
> . . . .
>
> ... Again, the support petition was filed in May of 1985. Under the Centre County practice and Rule of Civil Procedure 1910–17a, support orders become effective as of the date of filing of a support complaint. The Hearing Officer is thus, required to make the support order effective retroactive to the date of filing—May 10, 1985.... The effective date of the order for child support ... shall be May 10, 1985.

(Report and Recommendation of Hearing Officer, hereinafter "Report," at 2–3, Record item # 16). However, upon careful examination of appellant's petition in the certified record on appeal, (Record items, # 19 and 20), we are unable to find the date May 10, 1985 on any part of the petition or its attached documents. Instead, we find that the petition's verification is dated April 15, 1985; the certificate of service, signed by appellant's counsel, is dated May 7, 1985. Most importantly, the official prothonotary stamp of the lower court is dated September 4, 1986, fifty-one (51) days after appellant's notice of appeal, dated July 15, 1986, was filed.

 It is well settled that an appellate court can only consider the certified record on appeal when reviewing a case. *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974); *Ritter v. Ritter*, 359 Pa.Super. 12, 518 A.2d 319 (1986); *Anmuth v. Chagan*, 295 Pa.Super. 32, 440 A.2d 1203 (1982). Appellant's placing at issue the proper date from which the child support award should be calculated from, illuminates the discrepancy in the filing date of the petition for support. Even though the parties and the lower court do not contest the May 10, 1985 date as being the proper filing date for appellant's petition, since the certified record directly contradicts their determination, we would be justified, in accordance with Pa.R.A.P. 1926, in remanding to the lower court with instructions for that court to clarify the record and to make the record conform to the truth. *Ritter, supra; Johnson v. Keystone Insurance Company*, 299 Pa.Super. 187, 445 A.2d 517 (1982). However, because we find merit in appellant's argument, that the proper date for fixing appellee's support duty is the filing date of appellant's complaint in divorce, the exact filing date of the petition for support becomes irrelevant.

In *Shovlin v. Shovlin*, 318 Pa.Super. 516, 465 A.2d 673 (1983), we held that even though Pa.R.C.P. 1910.17(a) did not require that a support Order be retroactive, absent a statement of any specific reason to justify nonretroactivity, a complaint for support and petition for modification are generally retroactive only to the date of their filing.[5] *See Fortune/Forsythe v. Fortune*, 352 Pa.Super. 547, 508 A.2d 1205 (1986). Appellee contends that because appellant's July 20, 1984 divorce complaint contained only a "boiler-plate" clause requesting child support, it was insufficient to constitute a complaint for support under Pa.R.C.P. 1910.5. Rule 1910.5 states that "[t]he complaint shall be substantially in the form provided by Rule 1910.26(a)." Appellee continues that since appellant's "Petition for Support" complied with the format of Pa.R.C.P. 1910.26(a), it was in

---

5. Rule 1910.17. Support Order Effective Date. Change of Address
 (a) An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise.

essence appellant's proper "complaint" for support and the date of that petition/complaint, i.e., May 10, 1985, is the earliest date for which a support award may be made retroactive under *Shovlin, supra.*

We disagree with appellee's argument and logic for the following reasons. We find that appellant properly raised his claim for child support in his complaint in divorce as allowed by both statute and the rules of civil procedure. In paragraph thirteen (13) of his complaint in divorce, appellant requested the following relief: "[t]he plaintiff requests the court, following determination of the issue of custody, to enter an Order for child support in an amount deemed just and proper." (Record item # 1). Pennsylvania Rule of Civil Procedure 1920.13(b) provides the methods for pleading more than one cause of action in a divorce action as follows:

(b) The plaintiff may

(1) join in the complaint in separate counts any other claims which may under the Divorce Code be joined with an action of divorce or for annulment or, if they have not been so joined, the plaintiff may as of course amend the complaint to include such other claims or may file to the same term and number a separate supplemental complaint or complaints limited to such other claims; or

(2) file to the same term and number a subsequent petition raising such other claims.

Those claims, which may be joined under the Divorce Code, 23 P.S. § 101 *et seq.*, with an action of divorce, are set forth in 23 P.S. § 301 Jurisdiction, which reads in pertinent part:

(a) The courts of this Commonwealth as defined in section 104[1] shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages and, where they have jurisdiction, shall determine in conjunction with any decree granting a divorce or annulment the following matters, where raised in the complaint or the answer and issue appropriate decrees or orders with reference thereto and may retain continuing jurisdiction thereof:

. . . .

(3) Any support or assistance which shall be paid for the benefit of any children of such marriage or purported marriage.

. . . .

Thus appellant's request for child support within his complaint in divorce is proper under the rules of procedure.[6]

Here, appellant did not choose to file an independent complaint in support to the same term and number as his divorce complaint, pursuant to Pa.R.C.P. 1910.1 *et seq.*, and join this with the divorce complaint for resolution. Instead, as allowed by the rules, appellant joined in his divorce complaint a separate count of child support and filed a subsequent "petition" for support in order to provide the hearing officer the necessary social and economic information to assist him in rendering a decision. Pa.R.C.P. 1910.-1(a) provides that: "[e]xcept as provided by subdivision (b), the rules of this chapter govern all civil actions or proceedings brought in the court of common pleas to enforce a duty of support." Subdivision (b) specifically excludes several actions and proceedings from the operation of the Rules of Civil Procedure, however, none of those actions are present in this case.[7] As explained in the 1981 Explanatory Note to Rule 1910.1:

6. We note that in addition to requesting child support, appellant's complaint in divorce also requested equitable distribution, alimony pendente lite, and custody of the children, as well as alimony by an amendment to his complaint, filed on February 26, 1985. (Record item # 5). All of these claims were presented in paragraph form and not as separate counts as required by Pa.R.C.P. 1920.13(b)(1). Although we do not view such practice favorably, we will not allow it to adversely affect appellant's case.

7. Pa.R.C.P. 1910.1(b) provides as follows:
(b) The rules of this chapter shall not govern
(1) actions or proceedings for support based upon
(a) the interstate reciprocal provisions of the Revised Uniform Reciprocal Enforcement of Support Act (1968), 42 Pa.C.S. § 6741 et seq.;
(b) Sections 4 to 7 of the Support Law of June 24, 1937, P.L. 2045, 62 P.S. §§ 1974–1977, relating to the rights, duties and proceedings

> All actions or proceedings to enforce a duty of support not included in the list of exclusions in subdivision (b), whether that duty arises from common law, statute or agreement of the parties, will be governed by these Rules. These Rules will provide the complete procedure for all such actions of support. The practitioner need not refer to any other source, except for substantive law or administrative procedure. Acts of Assembly governing procedure in actions to which these Rules apply will be suspended.

By employing the format set forth in Pa.R.C.P. 1910.26(a) for his petition for support, appellant was following the procedural method adopted by our Supreme Court for enforcing a duty of support. Appellee's assertion that this acted to make the petition a separate complaint for support is meritless in view of appellant's right under Pa.R.C.P. 1920.13(b) to bring such a claim in his complaint in divorce.

We hold that the award of child support should be retroactive to the date of the filing of appellant's complaint in divorce, July 20, 1984, and not the date of the subsequent petition for support. To hold otherwise would defeat the underlying rationale of *Shovlin, supra,* which found that retroactivity of a support award was necessary to both alleviate hardship on a custodial party who is entitled to support, but who is required to proceed through the often slow-moving judicial process, and to create a disincentive for the party liable for support to use dilatory tactics. *Commonwealth ex rel. Banks v. Banks,* 330 Pa.Super. 128, 478 A.2d 1387 (1984). Our Opinion in *Shovlin, supra,* involved a complaint for support and did not deal with a claim of support raised in a complaint in divorce. There

between indigents, relatives liable for their support, and public agencies; or

 (c) a contract or agreement unless the contract or agreement provides that it may be enforced by an action in accordance with these rules; and

 (2) an application for a temporary order of support and other relief pursuant to the Protection from Abuse Act of October 7, 1976, P.L. 1090, No. 218, as amended by the Act of June 23, 1978, No. 81, 35 P.S. § 10181 et seq.

appears to be no jurisdiction or public policy rationale that would prevent us from applying those same fundamental considerations we applied in *Shovlin, supra.*

As we noted earlier, retroactive application of a support award is not mandatory; however, "unless the order specifies otherwise" or the trial court gives a statement of a specific reason to justify nonretroactivity, the support Order will be retroactive to the date of the filing of a request. Pa.R.C.P. 1910.17(a); *Shovlin, supra.* Upon careful review of the record, we find that neither the lower court nor the hearing officer gave a statement of a specific reason to justify nonretroactivity for the support award ordered. Further, by not finding a retroactive duty of support for one son because of mitigating actions by appellee, but finding a retroactive duty towards the other son without mention of mitigating circumstances, we are satisfied that the hearing officer found no reasons to deny retroactivity of the support award with respect to the younger son.

Next, appellant claims that the lower court and hearing officer erred in including the marital home, camper, Dodge truck (or van) and a Volkswagen automobile as marital property. Appellant contends that the parties agreed in November, 1982 on the division of their property and that within days of their separation in February, 1983, the parties carried out the agreement by formally transferring the deed and titles of the property to appellant. Based on this agreement, appellant claims the items were no longer marital property, but were owned solely by appellant and should not have been part of the property distribution rendered below.

Equitable distribution is within the discretion of the trial court and its decision will not be disturbed absent an abuse of that discretion. *Madden v. Madden*, 336 Pa.Super. 552, 486 A.2d 401 (1985); *Kleinfelter v. Kleinfelter*, 317 Pa.Super. 282, 463 A.2d 1196 (1983); *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983); 23 P.S. § 401(d). As we stated in *Braderman v. Braderman*, 339 Pa.Super. 185, 190–91, 488 A.2d 613, 615–16 (1985):

An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. As a result, under the abuse of discretion standard, we do not usurp the trial court's duty as fact finder; rather, we carefully scrutinize each of the guidelines to determine whether the lower court has abused its discretion. *Ruth, supra.* However, an abuse of discretion will be found by this court if the trial court failed to follow proper legal procedures or misapplied the law. *Banks v. Banks,* 275 Pa.Super. 439, 418 A.2d 1370 (1980).

(Footnote omitted). Considering this standard of review we now address appellant's claim.

Appellant contends that the lower court erred in designating certain property as "marital property." Section 401(f) of the Divorce Code, 23 P.S. § 101 *et seq.,* provides:

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

23 P.S. § 401(f); *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983). It is undisputed that the house, camper, Dodge truck and Volkswagen were acquired by the parties during the marriage and were held by both parties until the time of the transfer to appellant in February, 1983. Appellant now claims, *inter alia,* that he met his burden of overcoming the presumption of marital property with respect to these items by showing that he acquired the property by valid agreement of the parties, entered into during the marriage, in accordance with 23 P.S. § 401(e)(2).[8]

8. Section 401(e)(2) of the Divorce Code, 23 P.S. § 101 *et seq.,* provides:
(e) For purposes of this chapter only, 'marital property' means all property acquired by either party during the marriage except:
. . . .
(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

■ After a careful review of the record and testimony presented, we find the lower court abused its discretion in finding that a valid agreement was not entered into by the parties during the marriage concerning the distribution of marital assets. It is clear from both the appellant's and appellee's testimony that sometime in November, 1982, while the parties were having marital difficulties, the parties had a discussion about the distribution of the marital property and appellee, at that time, told appellant that she did not want any of the property. During direct examination by appellant's counsel, appellant indicated in what manner the agreement was reached, as follows:

Q. Would you explain to us the circumstances surrounding that conveyance? When was the matter first discussed?

A. In November of 1982, my wife admitted that she was having an affair with another man. I confronted her about the distribution of the property at that time. I think the actual words I said to her ... I said what the hell am I gonna do now. Am I gonna have to sell everything *or what?* She said, No, I don't want anything. To the best of my knowledge, that's pretty near the exact words that were said. (Emphasis and ellipsis in original).

Q. Was there any further discussion regarding it?

A. I don't think there was any further discussion until the time she moved out in February.

(N.T. 11/21/85, p. 4). Appellant's testimony was confirmed by appellee during cross-examination as follows:

Q. Now, in November of 1982, you had a discussion with your husband regarding problems that had developed. Is that correct?

A. Yes.

. . . .

Q. You heard Mr. Barner testify that it was at that time he stated to you ... what am I gonna have to do ... sell everything? And you responded ... No, I don't want

anything. Do you deny that that conversation took place? (Ellipses in original).

A. No, I don't deny that conversation took place. (N.T. 11/21/85, p. 67).

The parties separated in early February, 1983, with appellee moving out of the marital home and appellant remaining.[9] Shortly after their separation, on February 14, 1983, the parties went before a Notary Public and transferred the deed to the house and the titles from appellant and appellee's names to appellant's name alone. Appellee admitted that at the time of the transfer she was fully aware of what she was signing; specifically, she stated she knew what the deed to the house was and what the titles to the camper, truck and car were. (N.T. 11/21/85, p. 70). It was these physical acts of signing the deed and titles and formerly transferring appellee's interest in the property from her to appellant which executed the earlier agreement of the parties.

To refute the clear evidence presented, that an agreement was carried forth as contemplated by the parties, appellee testified and argues on appeal that the purpose of the transfer was to enable appellant to use the property as collateral for loans so that he could remodel and build duplex homes. However, both appellant and appellee testified that the idea of appellant remodeling duplexes occurred years before the marital difficulties arose. (N.T. 11/21/85, p. 34). During cross-examination appellee responded as follows:

Q. When was the first discussion regarding Harold's purchases of duplexes?

A. The first discussion could have been years before we even ... any of the problems started, because before he even went to New Jersey to work, we talked about

9. The report of the hearing officer fixed the date of separation at February 9, 1983. (Report and Recommendation of Hearing Officer at ¶ 29). Appellant testified that the parties separated on February 5, 1983, (N.T. 11/21/85, p. 4), and appellee testified it was February 9, 1983 (N.T. 11/21/85, p. 70).

purchasing duplexes together to fix them up to rent them. (Ellipsis in original).

(N.T. 11/21/85, p. 68), confirming that the idea had preceded the marital difficulties which eventually necessitated the parties' divorce. Nowhere in the record, however, was there evidence of a tie in between the two prior to or at the time of the agreement to transfer the property. Although appellant's intentions at the time of transfer may have been to eventually use the house as collateral, this intent does not impinge upon the oral agreement entered into by the parties. Reading the record as a whole, appellant's ongoing plans as to business ventures are not relevant to the valid agreement executed by the parties.

We find that the lower court erred in relying on the hearing officer's finding that no valid agreement existed between the parties. Since the house, camper, Dodge truck and Volkswagen automobile were excluded from marital property by 23 P.S. § 401(e)(2), we find that it was improper to consider them as such when equitably dividing the marital assets.[10]

Appellant's objection on appeal to defendant's Exhibit D-6, concerning the distribution of household goods, has been waived due to appellant's failure to object to this exhibit when it was admitted and discussed during the direct examination of appellee. (N.T. 11/21/85, pp. 50–52). Additionally, appellant's arguments concerning the impropriety of the trial court's Order directing appellant to pay $3,690.50 in cash to appellee are waived for failure to properly raise them in his exceptions to the report of the hearing officer. (Record item # 14, ¶ 16). In this case, appellant's mere assertion, without more, that the hearing officer erred in finding that appellant should pay the amount plus interest to appellee is insufficient. *Nord, supra,* and *Dudash, supra.*

10. Since this Court finds that there exists a valid agreement which excludes the property in question from marital property under 23 P.S. § 401(e)(2), it is unnecessary for us to consider appellant's arguments as to the applicability of 23 P.S. § 401(e)(3) and (4).

18

Consequently, by removing the proceeds from the sale of the house and the value of the camper, truck and Volkswagen from marital property, the hearing officer's distribution of the marital assets will be altered. In keeping with basic distribution of equality between the parties, which the hearing officer and lower court considered appropriate under the circumstances, we find that as to the remaining marital assets it will be necessary for the court to reconsider the distribution of that property, as it is effected by this determination, and we will, therefore, remand the case for that purpose.

The final issue remaining is appellant's claim for alimony pendente lite and counsel fees. Appellant claims the lower court erred in ruling that appellant's request for alimony pendente lite was waived by appellant due to his response during the hearing that at the time of the hearing he no longer needed alimony pendente lite.[11] As stated earlier, appellant's complaint, filed July 20, 1984, contained appellant's request for alimony pendente lite. On June 21, 1985, appellant remarried and with this new marriage appellant's economic situation improved substantially. The hearing on alimony pendente lite, *inter alia*, was not held until November 21, 1985. Appellant now seeks alimony pendente lite from the time he requested it until the date of his remarriage.

Our scope of review of an award of alimony pendente lite is limited to determining whether or not the trial court has manifestly abused its discretion in awarding or denying alimony pendente lite. *Parker v. Parker*, 335 Pa.Super. 348, 484 A.2d 168 (1984); *Cross v. Cross*, 310 Pa.Super. 124, 456 A.2d 214 (1983). An award of alimony

11. Appellant's testimony during cross-examination was as follows:
 Q. Under your present circumstances, Mr. Barner, why do you need temporary alimony?
 A. May be [sic] in my present circumstances, I do not need it. But whenever she left, I did need it. She left me with nothing, when she left.
 Q. When did things change for you?
 A. When I remarried.
 (N.T. 11/21/85, p. 23).

pendente lite is designed to enable the dependent spouse to maintain or defend the action in divorce. *Prozzoly v. Prozzoly*, 327 Pa.Super. 326, 475 A.2d 820 (1984). In determining an award of alimony pendente lite, the trial court should consider the respondent's ability to pay, the petitioner's separate estate and income and the general character, situation, and surroundings of the parties. *Orr v. Orr*, 315 Pa.Super. 168, 461 A.2d 850 (1983). *Wechsler v. Wechsler*, 242 Pa.Super. 356, 363 A.2d 1307 (1976). Normally, an award of alimony pendente lite may be made retroactive to the filing of the petition or complaint in which it was requested. *Orr, supra.*

 While appellant's remarriage in June, 1985 probably constituted a substantial change in appellant's general character, situation and surroundings considering the higher income of his new spouse, the trial court abused its discretion in summarily concluding that appellant waived any claim to alimony pendente lite from the time of his request in July, 1984 until the time of his remarriage. The lower court erred in failing to make a determination as to what period of time, if any, appellant was entitled to alimony pendente lite prior to the hearing but before his remarriage. One of the main reasons for making alimony pendente lite awards retroactive is to insure that the recipient does not unduly suffer because of the delay inherent in the judicial process. However, upon an independent review of the record, we find that appellee did not show a need for alimony pendente lite during the period between his filing of the complaint and his remarriage due to both appellee's low income for the period and our earlier determination that appellant had a full and undivided interest in the house, camper, truck and Volkswagen, which upkeep and maintenance were his responsibility. The same rules of law and financial considerations determine the award of counsel fees. The amount submitted by appellant for counsel fees is $925.39 of which appellant avers that the wife should pay at least 50 per cent. For the reasons expressed above as to

alimony pendente lite, we conclude that no error was committed in failure to award counsel fees retroactively.

Accordingly, for the above-stated reasons, the award of child support is retroactive to the date of the filing of appellant's complaint in divorce, July 20, 1984; with respect to the issue of equitable distribution, we reverse the lower court's determination that the house, camper, Dodge truck and Volkswagen automobile were "marital property," as to the remaining property, we remand the case to the lower court for equitable distribution; the Decree of the lower court denying alimony pendente lite and counsel fees is affirmed.