576 A.2d 1060

**Linda C. WAYDA**

**v.**

**Robert E. WAYDA, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1990.

Filed June 14, 1990.

J. Ross McGinnis, York, for appellant.

Donald B. Hoyt, York, for appellee.

Before ROWLEY, FORD ELLIOTT and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an April 13, 1989 Order of equitable distribution awarding wife-appellee alimony pendente lite, counsel fees, and 70% of the marital assets, and awarding

30% of the marital assets to husband-appellant. Appellant contends that the trial court erred in: (1) awarding a 70–30 division of marital assets; (2) directing that appellee pay appellant his share of the marital property via interest-free installments; (3) finding that appellee's father did not forgive all or part of a $1,600 loan he had made to the parties during the marriage; (4) finding that appellee was not obligated to pay appellant one-half of the cost of preparing a joint tax return and one-half of the tax savings obtained due to the filing of that return; (5) utilizing the testimony of appellee's appraiser in its estimation of the value of the marital residence; (6) including funds appellant received from the sale of two BMW automobiles in its estimation of marital assets; and directing appellant to (7) pay appellee alimony pendente lite, as well as (8) counsel fees and costs. For the reasons that follow, we vacate the Order below and remand for proceedings consistent with this opinion.

The parties in this action, appellant Robert Wayda and appellee Linda Wayda were married in May of 1970. On January 6, 1987, appellee filed a divorce complaint pursuant to Section 201(a)(6) of the Divorce Code.[1] The parties separated on October 10, 1987, and the Divorce Decree was entered on April 4, 1988. On March 29 and 30, 1988, hearings regarding equitable distribution and counsel fees were held before a Master. Further evidence in the form of depositions of the parties and witnesses was taken on March 31, 1988 and April 20, 1988. The divorce was granted on April 4, 1988. On October 28, 1988, the Master filed his Report on the economic issues recommending that appellee receive 65% of the marital assets, and that appellant pay alimony pendente lite and counsel fees. Appellant filed numerous exceptions to the Report. On April 13, 1989, the Court of Common Pleas of York County issued its Opinion and Order accepting the Master's recommendation in part, modifying it in part and dividing the marital assets 70–30 in favor of appellee. This appeal followed.

1. 23 Pa.S.A. § 101 et seq.

The fashioning of an award of equitable distribution rests in the discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. *See Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982); *Madden v. Madden,* 336 Pa.Super. 552, 486 A.2d 401 (1985); *Kleinfelter v. Kleinfelter,* 317 Pa.Super. 282, 463 A.2d 1196 (1983). In reviewing the lower court's action, we must apply the Divorce Code to the record to determine whether the hearing court abused its discretion;[2] we will find an abuse of discretion only if the hearing court misapplied the law or failed to follow proper legal procedure. *Lowry v. Lowry,* 375 Pa.Super. 382, 544 A.2d 972 (1988) (citations omitted); *see also Madden v. Madden, supra.*

Section 401 of the Divorce Code sets forth certain factors courts are to consider in their division of marital property as follows:

(1) The length of the marriage

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

**2.** Because this action was commenced prior to the February, 1988, amendments to the Divorce Code, appellant contends that the prior version of the Code is applicable to his claims. *See* Appellant's Brief at 16. Our Supreme Court, however, has held that the equitable distribution provisions of the Code constitutionally can be applied to property rights which vested prior to the Code's effective date. *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988); *see also Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982); *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983). We note that the only difference between the present Divorce Code and the prior version is the addition of factor number eleven relating to which parent will serve as custodian of any dependent minor children. See 23 Pa.S.A. § 401(d), *infra.* Appellant does not show how he was harmed by the trial court's application of the present version of the Code to this case. Furthermore, the trial court explicitly held that it did not need to apply factor number eleven to this case to find that a 70–30 division of the marital assets was equitable. Accordingly, we see no error in the trial court's application of the new Code, and we will utilize the present version of the Code in our evaluation of appellant's claims.

(5) The opportunity of each party for future acquisition of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.S.A. § 401(d). The weight to be given to the factors above in determining the equitable distribution of assets is within the discretion of the trial court. *Sergi v. Sergi,* 351 Pa.Super. 588, 506 A.2d 928 (1986); *cf. Campbell v. Campbell,* 357 Pa.Super. 483, 516 A.2d 363 (1986) (weight to be accorded evidence in equitable distribution action within discretion of fact finder).

Appellant's first argument is that the trial court failed to consider all the relevant factors when it made a 70–30 equitable distribution of the parties' marital property. Specifically, appellant contends that the court erred in failing to consider the poor initial condition of the marital residence and his contributions to the improvement of that property in accordance with Section 401(d)(7).

█ A close examination of the record reveals that information concerning the initial condition of the residence was specifically presented to the Master, and was part of the record before the court below. *See* N.T. March 30, 1988 at 107, 113, 120–21, 137–38. Thus, this information was before the court, and, as we have noted above, the court was free to assign it whatever weight it chose. *Campbell v. Camp-*

*bell, supra.* We cannot hold that the court's failure to specifically discuss this information constitutes an abuse of discretion.[3]

■ Appellant's next claim concerns the trial court's determination that he was more likely to acquire capital assets than appellee. He argues that the trial court failed to consider the fact that appellee's station was above his, and that "the capital assets acquired by the parties were all initially acquired with the assistance of [appellee's] family." Appellant's Brief at 17. In effect, appellant suggests that the trial court erred in finding that he was more likely to acquire capital assets than appellee, because appellee can expect to receive gifts of capital assets from her parents. We disagree.

In evaluating appellant's claim we are guided by the principles enunciated in *Gruver v. Gruver*, 372 Pa.Super. 194, 539 A.2d 395 (1988):

We must read Section 401(d) dealing with factors to be considered in making equitable distribution in light of Section 401(e)(3) which states:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

It is clear under Section 401(e)(3) that any inheritance that appellant might receive from his parents during his marriage would not be marital property.... [T]he legislature did not intend that the court consider as a factor in making equitable distribution the possibility of an inheritance.... It would be patently incongruous for the court to properly consider the possibility of an inheritance when

3. Appellant also argues that the court failed to consider that his health was poor. This argument is unsupported by the record. Although appellant entered psychological counseling for the stress related to the divorce, appellant testified that he was otherwise in good health. *See* N.T. March 30, 1988 at 97.

such an inheritance would not be marital property. We therefore hold that the court did not abuse its discretion by not considering the possibility that wife's parents might make her a gift of capital assets in the future....

Any possibility of an inheritance is too tenuous to attribute any weight to it.

*Id.*, 372 Pa.Superior Ct. at 197–98, 539 A.2d at 397. The *Gruver* court thus found that it would be unreasonable to include possible inheritances in its equitable distribution calculations because that property, even if it had been received by a spouse before divorce, would not be part of the marital estate, and the possibility that a party might receive a gift of capital assets is too speculative. As the trial court noted, Section 401(e)(3) excludes "gifts" from marital property. Thus, in light of *Gruver*, appellant's argument that the trial court erred by failing to consider potential gifts to appellee in its division of the marital assets is clearly meritless.

■ Appellant's second argument is that the trial court erred by allowing appellee to pay him for his share of the marital property in installments over a ten year period. Alternatively, he argues that the trial court erred by failing to order appellee to pay interest on the installments. Before turning to these manner of distribution arguments, we should emphasize the flexible, realistic approach required by the Divorce Code. The purpose of the equitable distribution provisions of the Divorce Code is to "effectuate economic justice between parties who are divorced or separated and ... insure a fair and just determination and settlement of property rights." 23 Pa.S.A. § 102(a)(6). *See Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985) (court must allocate marital assets fairly, consistent with legislative intent to effectuate economic justice between parties); *see also Bacchetta v. Bacchetta, supra* (by providing for distribution of property acquired during marriage, Divorce Code permits correction of economic injustices). Furthermore, the Divorce Code itself states that:

the court shall ... equitably divide, distribute or assign, in kind or otherwise, the marital property between the

parties without regard to marital misconduct *in such proportions and in such manner as the court deems fit...."*

23 Pa.S.A. § 401(d) (emphasis supplied).

Appellant has cited no authority, and our research has revealed none, in support of his argument that appellee should be required to pay him his complete share of the marital assets in a lump sum. The trial court had the discretion to decide that appellee pay appellant via any method it saw fit, so long as the result was a "fair and just" determination of the parties' rights. We have reviewed the record, and find no evidence that the trial court misapplied the law or failed to follow proper procedure in deciding that appellee should make that payment via installments to be paid over a ten year period. Therefore, we cannot conclude that the trial court's decision in this regard constituted an abuse of discretion.

 Appellant's claim that the trial court abused its discretion by failing to order that the installment payments carry interest is more problematic. The trial court reasoned that because appellee's parents made the parties an interest free loan by which the marital *residence* was acquired, the installment payments appellee makes to appellant in satisfaction of his share of the marital *assets* should not carry interest. This rationale possesses a certain symmetry, in light of the fact that the marital residence was the principal marital asset (representing approximately $163,000 of the $176,000 value of the total marital property). However, a closer examination of this scheme of distribution reveals that it is not a realistic and fair method of distributing appellant's supposed 30% of the marital assets. The difficulty with the court's order in this regard is two-fold. First, even if the interest-free payment was fair as a general matter in light of the earlier loan, the value of the marital residence does not represent the *total value* of the marital assets. *See* Master's Report, October 28, 1988 at 7–8. Therefore, not all of appellant's share of the marital property can be said to have been derived from the interest

free loan from appellee's father. Second, the fact that the benefits are deferred over time calls into question the accuracy of what the court intended to be a 70–30 distribution. The trial court found that appellant was entitled to receive 30% of the value of the marital assets as of the time of the distribution. *See* Lower Court Opinion at 3–4. However, because of inflation and appellant's inability to have use of the money, the value of the money appellant would receive over ten years would be less than the value of the money he would have received in 1988, the time of the distribution. Thus, under this scheme, appellant in fact will not receive 30% of the then-present value of the property. As appellant notes, the effect of this arrangement is to "provide [appellee] with an interest free loan ... [A]ppellant will receive a significantly smaller share of the marital property to which he is entitled if [appellee] is permitted to pay via an interest free arrangement." Appellant's Brief at 21. If the trial court intended that appellant receive less than 30% of the marital assets, it should have stated so. The question of whether installment payments made by one spouse to another pursuant to a division of marital property should bear interest is one of first impression in Pennsylvania.[4] However, we are convinced that, at least on the facts of this case, the failure to account for the effect of such a deferred payment was an abuse of discretion. Therefore, we hold that the trial court abused its discretion in ordering that appellee pay appellant his share of the marital assets via interest free installments because it did not "effectuate economic justice" or "insure a just and fair determination and settlement of property rights" as required by § 102(a)(6) of the Divorce Code. Accordingly, we remand this issue, and direct the trial court to fashion an order that

4. We have indirectly discussed this issue in *Morschhauser v. Morschhauser*, 357 Pa.Super. 339, 516 A.2d 10 (1986) (reviewing court found no abuse of discretion in trial court's requiring husband to pay wife's share of martial assets in lump sum even if he had to take out loan to do so, because if he paid her over time he would be required to pay her interest, just as he would a bank). *Accord Daly v. Daly*, 179 N.J.Super. 344, 432 A.2d 113 (App.Div.1981) (where realization of distributive share of marital property delayed, husband-appellant entitled to reasonable rate of interest).

takes into account the effect of inflation on the value of appellant's award.

Appellant's third argument is that the trial court erred in finding that the parties owed appellee's parents $1,600. Appellant's Brief at 25. Specifically, he argues that the debt was satisfied in part because (a) appellee's father failed to cash two four hundred dollar checks delivered to him in an attempt to satisfy the debt; and (b) by agreement with her father, appellee performed work on the marital residence that had a value of four hundred dollars. Appellant also argues that (c) the court failed to take note of one $400 payment that he and appellee made to her parents.

■ With regard to the two uncashed checks, appellant claims that because he delivered them to appellee's father in an attempt to satisfy the debt, and appellee's father never cashed the checks, $800 of the debt should be forgiven. As the Master noted in his report, however, when an indebtedness is not evidenced in writing, it can only be forgiven by a written receipt or other sufficient writing giving clear proof of the gift. *See In re Russell's Estate*, 385 Pa. 557, 123 A.2d 708 (1956). Here, the record reveals that appellee's father brought suit to recover the balance owing him when it appeared that the parties would not repay the loan, and that he did not cash the checks in question solely because the parties were then having financial difficulties. *See* R.R. at 69a; N.T. April 20, 1988 at 53. Furthermore, there is no written evidence that appellee's father intended to forgive the debt. Appellant's arguments regarding forgiveness of the loan from appellee's father, therefore, are meritless.

■ Appellant's next claim is that appellee entered into an agreement with her father by which she did work around the marital residence in exchange for a reduction in the debt. The record reveals that only appellee testified that such an arrangement existed. *See* N.T. April 20, 1988 at 123. The court was free to assign whatever weight it chose to this testimony, and apparently chose not to acknowledge the existence of such an agreement in the absence of other

written evidence. *See* Master's Report at 10, Lower Court Opinion at 7. In the absence of an error of law or an abuse of discretion, this court is bound by the findings of fact of the lower court. *See Ecksel v. Orleans Const. Co.,* 360 Pa.Super. 119, 519 A.2d 1021 (1987). Here, a careful review of the record reveals no evidence that the trial court abused its discretion in not finding that such an agreement existed.

Finally, with regard to appellant's last claim concerning the $1,600 loan, close examination of the record indicates that the court apparently overlooked the April, 1987 four hundred dollar payment, which was listed in revised plaintiff's Exhibit 19. Thus, upon remand, we direct the trial court to deduct that $400 payment from its estimate of the amount the parties owe appellee's parents.

Appellant's fourth argument is that the trial court erred by not holding appellee to an alleged agreement which would require her to reimburse him for one-half of the cost of preparing their joint tax return and one-half of the tax savings that resulted from the filing of that return. Specifically, he argues that appellee was overcompensated for her agreement to file the joint return. He also asserts that appellee received the benefit of having his accountant prepare the joint return, and thus, she should be required to pay one-half of the accountant's bill. We agree with appellant's first argument, and disagree with the second.

It is well-settled in Pennsylvania that where the words of a contract are clear and unambiguous, the intent of the parties must be determined exclusively from the agreement itself. *Metzger v. Clifford Realty Corp.,* 327 Pa.Super. 377, 476 A.2d 1 (1984). Furthermore, it is settled that:

> where the written contract covers or purports to cover the entire agreement of the parties, and there is no ... proof that anything was omitted therefrom [or included therein] by fraud, accident, or mistake, all prior and contemporaneous negotiations, representations and verbal agreements are superceded by the written agreement, and parol [extrinsic] evidence is inadmissible to alter or

contradict or vary or add to or subtract from or modify or supercede the written contract.

*McFadden v. American Oil Co.*, 215 Pa.Super. 44, 257 A.2d 283 (1969) (citations omitted). Here, the record reveals that the parties agreed that appellant would pay appellee $666.50 if she signed and filed a joint tax return. *See* Defendant's Exhibit 28, R.R. at 139a. Neither party disputes the existence of this agreement. We agree, therefore, with the court's finding that the parties are bound by the agreement.

■ The question we must determine is whether the effect of the agreement was properly factored into the award below. The agreement in question was contained in a letter dated August 12, 1987, written by one of appellee's attorneys. That attorney was out of town as of September 27, 1987, when another attorney from his firm wrote a letter in which he insisted that appellant pay appellee the *entire* tax savings, or lose appellee's cooperation altogether. *See* R.R. at 141a. Counsel's insistence that appellant pay appellee the entire tax savings contradicted the terms of the August 12 agreement. In response to the second letter, appellant's counsel paid appellee all of the savings obtained as a result of the filing of the joint return, approximately $1,400. Instead of directing appellee to pay appellant back the overpayment, however, the court held appellant to the terms of the second letter, and excluded the tax savings from the rest of its equitable distribution calculations. This resulted in appellee receiving twice as much money as she was entitled to under the agreement without that benefit being factored into the court's calculation of her share of the marital assets. Because we can discern no basis for the court's failure to properly factor this agreement into its award, we must conclude that the court abused its discretion in this regard.[5] We therefore remand and direct the

5. Appellee asserted that she is entitled to keep the money because "[t]he amount of money that ... Mr. Wayda sent over, was the benefit that Linda's signature on the tax return made. If she had not signed the tax return, the account would have been $6,000 due." N.T. April 20, 1988 at 158. There are two problems with this argument. First, it

trial court to account for the extra money appellee received in its calculation of the financial relationship between the parties.

Appellant also claims that appellee received the benefit of his accountant's work in preparing the joint return and thus she should have to pay one-half of his accountant's fees of $1550. We disagree.

The parties' agreement, as evidenced by appellee's letter of August 12, 1987, clearly and unambiguously stated that appellant was to pay appellee half of the tax savings obtained by filing a joint return, minus the cost she would have incurred in filing her individual return. There is no reference to any accountant's bills, and close examination of the record reveals no evidence that the parties intended that appellee should help appellant pay his accountant's expenses. Furthermore, since appellee's expected benefit was $666.50, any evidence that she agreed to pay appellant half of his accounting expenses or $775 would amount to a material alteration of the terms of the contract which, as we have noted above, cannot be accomplished by parol evidence. Accordingly, the trial court did not abuse its discretion in refusing to order wife to pay one-half of appellant's legal fees.

Appellant's fifth argument is that the court erred by not accepting the appraisal of Phillip Eppley in valuing the marital residence at $190,000 as specified in a stipulation by the parties. We agree.

Parties are free to bind themselves by stipulation on all matters not affecting the jurisdiction and prerogatives of the court, and the court has the power to enforce those stipulations. *Longenecker v. Matway*, 315 Pa.Super. 411,

is unsupported by the record as the August 12, 1987 letter that contains the original terms of the agreement also notes that husband's individual tax liability is $4,489. Defendant's Exhibit 28, R.R. at 139a. Second, as noted above, the parties do not dispute the existence of the agreement, which states that appellee is only entitled to half of the tax savings less the amount she would have paid had she filed individually. The parties are bound by this agreement, and therefore appellee is not entitled to keep all of the tax savings.

462 A.2d 261 (1983); *see also Zvonik v. Zvonik*, 291 Pa.Super. 309, 435 A.2d 1236 (1981) (any matter involving individual rights or obligations of parties may be subject of stipulation); *Marmara v. Rawle*, 264 Pa.Super. 229, 399 A.2d 750 (1979) (parties may bind themselves by stipulations so long as they do not affect jurisdiction of court and provided stipulations are not in contravention of peremptory statutory requirements).

■ Here, the record reveals that appellant and wife entered into a stipulation that reads as follows:

The joint residence of the parties is marital, having been given to both the husband the wife [sic] by the wife's parents. The parties will have Phil Eppley appraise the property.

R.R. at 5a. Despite this stipulation, the trial court failed to hold appellee to Mr. Eppley's appraisal, and instead valued the marital residence at $163,750, a figure that represents the average of Mr. Eppley's estimate and that of appellee's appraiser. Lower Court Opinion at 10. This action was in contravention of the parties' valid stipulation, and therefore constitutes an abuse of discretion. On remand, we direct the trial court to value the marital residence according to Mr. Eppley's appraisal.

■ Appellant's sixth argument is that the court erred by including the value of two BMW automobiles appellant had owned and sold in its estimate of marital property for the purposes of equitable distribution. Specifically, appellant argues that the value of the automobiles should have been excluded because before appellee sought equitable distribution and while they were still living together, he sold the automobiles and used the proceeds from the sale to satisfy their marital debts. We disagree.

In Pennsylvania marital property that is disposed of in good faith and used to satisfy marital debts is excluded when distributing marital property. *Lowry v. Lowry*, 375 Pa.Super. 382, 544 A.2d 972 (1988). The burden of proving such a use, however, is on the spouse who claims the

exclusion. *Id.* Furthermore, the determination whether the property has been so utilized is within the trial court's discretion. *See Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (1986); *Sergi v. Sergi, supra.* Finally, as noted above, in the absence of an error of law or abuse of discretion, this court is bound by the findings of fact of the lower court regarding appellant's disposition of the proceeds from the sale of the automobiles. *See Ecksel v. Orleans, supra.*

Here, a close examination of the record convinces us that the court did not abuse its discretion in including the value of the two automobiles. The only definite evidence appellant cites in support of his assertion is his own self-serving statement. Although appellant has provided copies of bills he paid during the period following his sale of the two automobiles, he has not shown any exceptional circumstances that would have forced him to use the proceeds from the automobiles to satisfy those obligations instead of his ordinary income. Indeed, appellant introduced no supporting evidence to establish a connection between those proceeds and marital debts. Finally, the trial court found that the bills appellant produced were not ineluctably related to the money he received from the sale of the automobiles. *See* Lower Court Opinion at 12. On such a record, we cannot hold that the trial court abused its discretion in finding that appellant failed to show that the proceeds from the sale of the BMWs were used to satisfy marital obligations.

Appellant's seventh argument is that the trial court erred in directing him to pay alimony pendente lite (APL). Specifically, appellant argues that the trial court miscalculated his monthly expenses and that appellee did not show that she required APL to maintain this action or defend herself in the divorce action.

An award of alimony pendente lite is designed to enable the dependent spouse to maintain or defend the action in divorce. Although the Divorce Code does not specify the grounds upon which an award of alimony pendente lite is to be made, this Court has held that the trial court

making an award of alimony pendente lite should consider the respondent's ability to pay, the petitioner's separate estate and income, and the general character, situation, and surroundings of the parties....

*Miller v. Miller*, 352 Pa.Super. 432, 437, 508 A.2d 550, 553 (1986) (citations omitted). *See Barner v. Barner*, 364 Pa. Super. 1, 527 A.2d 122 (1987) (same); *Bees v. Bees*, 255 Pa.Super. 19, 386 A.2d 114 (1978) (purpose of alimony pendente lite is to provide financially dependent spouse with income during pendency of divorce proceedings; elements to consider are respective incomes, estates and earning capacities of parties, and surrounding circumstances).

Our standard of review of awards of alimony pendente lite is well settled:

If a support order is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court. This scope of review applies equally to child support and alimony pendente lite orders.

*Fichthorn v. Fichthorn*, 368 Pa.Super. 305, 307–08, 533 A.2d 1388, 1389 (1987) (citations omitted); *see also Barner v. Barner, supra* (same); *Miller v. Miller, supra* (absent abuse of discretion, trial court's award of alimony pendente lite will not be disturbed); *McNulty v. McNulty*, 347 Pa.Super. 363, 500 A.2d 876 (1985) (in reviewing award or denial of alimony pendente lite, appellate court is limited to determination of whether trial court abused its discretion). In determining whether the trial court's decision constitutes an abuse of discretion, we generally evaluate its reasonableness in light of the record and its relation to the purposes of the Divorce Code as set forth in Section 401(d), *supra*. *See, e.g., Fichthorn v. Fichthorn, supra; Barner v. Barner, supra; McNulty v. McNulty, supra.*

Appellant argues that the court's Order that he pay APL was erroneous because the trial court's estimate of his expenses was inconsistent with his Income and Expense Statement. However, the trial court was not required to accept the figures suggested in the expense statements, and was free to assign whatever weight it chose to the evidence

appellant presented. *See Ecksel, supra.* In its Opinion, the trial court took explicit note of the parties' respective financial situations, and based on that evidence, entered an Order that appellant pay appellee $75 per week in alimony pendente lite. *See* Lower Court Opinion at at 14–15. Our examination of the record supports the trial court's finding regarding the parties' relative financial situations. *See* Appellee's Income and Expense Statement, Record at 7; Appellant's Income and Expense Statement, Record at 12. Because those determinations formed the basis upon which the trial court entered its order of alimony pendente lite, we cannot say that the court's actions did not "effectuate economic justice" between the parties or that the court's decision failed to "insure a fair and just determination" of the issue of alimony pendente lite as required by Section 401(d) of the Divorce Code. We therefore find no abuse of discretion as to this issue.

Appellant's final argument is that the trial court erred by ordering that he pay appellee's counsel fees and expenses. Specifically, he argues both that the record shows that he cannot afford to pay appellee's legal expenses, and that appellee has not shown that she is unable to pay them herself. We disagree.

> [I]t is appropriate to award counsel fees "when necessary to put the parties 'on a par' in defending their rights or in allowing a dependent spouse to maintain or defend and action for divorce." Whether or not to award counsel fees and expenses in a divorce case, and the amount to be awarded is a matter within the sound discretion of the trial court.... We will not reverse the action of the trial court with regard to its award of counsel fees absent an abuse of discretion.

*Gioia v. Gioia,* 382 Pa.Super. 538, 549, 555 A.2d 1330, 1336 (1989); *see also McNulty v. McNulty, supra.* The record reveals that the trial court based its decision to require appellant to pay $3,500 toward appellee's counsel fees on its estimate of the parties' relative incomes and expenses. *See* Lower Court Opinion at 17. Other than his assertion that

the court miscalculated his expenses, appellant does not challenge the reliability of the court's figures. As we have noted above, the trial court was free to assign whatever weight it chose to appellant's evidence, and our prior review has revealed that the trial court's estimate of his expenses did not constitute an abuse of discretion. Furthermore, appellant does not question the accuracy of the balance of the court's figures regarding the parties' income and expenses. Therefore, we cannot say that the trial court's use of those figures as a basis for granting wife's request for counsel fees constituted an abuse of discretion.

For the foregoing reasons, we find that the trial court abused its discretion in: (1) directing appellee to pay appellant his share of the marital assets via interest-free installments; (2) not taking into account a $400 payment from the parties to appellee's father; (3) failing to consider that appellee received more than she was entitled to under the tax agreement; and (4) utilizing the testimony of appellee's appraiser in its valuation of the marital residence. Accordingly, we vacate the Order of equitable distribution and remand for proceedings consistent with this opinion.

Case remanded. Jurisdiction relinquished.